Joseph A. Martinis, J.
This is a motion by the defendant for an order pursuant to section 813-c of the Code of Criminal Procedure to suppress certain evidence purportedly wrongfully seized, and excluding the same as evidence against him. A hearing was held before this court and the following facts were elicited: That in the early morning hours of June 27, 1964, pursuant to a tenant’s complaint, Con Edison dispatched a representative to premises 405 West 149th Street to investigate a gas leak; that no gas leak was found, but the representative detected a strong odor of gasoline and traced the odor to apartment 1-0, another apartment in the building; that he knocked on the door of apartment 1-0 and receiving no response, a call was made to the Fire Department, with the result that the Fire Department responded; that firemen knocked at the door of apartment 1-0 and likewise received no response from within; that Battalion Chief James J. O’Brien ordered a fireman to enter the apart *908 ment from the fire escape, and upon entering the apartment in this manner the fireman opened the door from the inside, allowing Chief 0 ’Brien and other firemen to enter the apartment; that a police radio patrol car had responded to the scene and Patrolman Richard T. Kelly stood in the foyer of the apartment while the firemen were present therein; that upon first entering the apartment the firemen observed clothing on the foyer floor that had been saturated with gasoline, and the firemen then entered a bedroom and found the defendant lying in a bed that was saturated with gasoline, with paper currency scattered about the bed; that Chief O’Brien said: “ Call the police”; that Patrolman Kelly came into the bedroom; that Chief 0 ’Brien ordered Patrolman Kelly to arrest the defendant, who was in the bed, for attempted arson; that Patrolman Kelly placed the defendant under arrest and ordered him to gather up the money and get out of bed; that the defendant started to collect the money and in so doing he moved a towel that was on the bed which revealed a .22 cal. pistol, which was loaded; that Patrolman Kelly then conducted a search of the apartment and found an unloaded .32 cal. pistol under the pillow, several glassine envelopes containing narcotics and a quantity of ammunition; that the defendant was subsequently indicted for attempted arson, criminally possessing two pistols, feloniously possessing a narcotic drug and two counts of unlawfully possessing a narcotic drug. This motion and resultant hearing are addressed to the suppression of the pistols and narcotics as evidence.
The defendant contends that (1) “ The search of the defendant’s apartment and the alleged seizure of the items heretofore mentioned was illegal in that a search warrant was not procured prior to the police officer’s entry into the apartment”; and (2) “ Even if the procurement of a search warrant was not mandated by the circumstances, the search was illegal since it was not incidental to a lawful arrest.”
In support of his contentions, the defendant relies upon two decisions by the United States Supreme Court in the cases of Taylor v. United States (286 U. S. 1), and Johnson v. United States (333 U. S. 10). In the Taylor case, law enforcement officers, without a search warrant, broke into a garage and seized whiskey, after detecting a strong odor of alcohol and peeping through an opening in the garage. The court said that the action of the officers was inexcusable and the seizure unreasonable, and since the evidence was obtained unlawfully, it should be suppressed. The court further stated that the officers had ‘1 abundant opportunity to do and to proceed in an orderly way even after the odor had emphasized their suspicions; there *909 was no probability of material change in the situation during the time necessary to secure such warrant.”
In the Johnson case, law enforcement officers detected an odor of burning opium emanating from a hotel room, and without a search warrant, entered the premises without Imowing who was there and arrested the occupant. Here, too, the Supreme Court held that the procedure adopted by the officers constituted an illegal search and seizure, and rejected the argument that the search was incidental to a valid arrest. The court further indicated that the seized evidence or contraband was not “ threatened with removal or destruction ” (p. 15) and they “would not perish from the delay of getting a warrant (p. 15).”
The above-cited cases are readily distinguishable from the case at bar. No immediate urgency or emergency existed in the Taylor and Johnson cases, for the obvious reason that the evidence or contraband was of such a nature as to preclude the possibility that it would be removed, disappear, disintegrate or perish from the scene, especially since the officers were in a position to continue their surveillance and observation while a search warrant was being obtained. In the case at bar, however, the defendant was an occupant of an apartment in a multiple dwelling wherein many other persons resided, and who, because of the late hour of the incident herein, were asleep. It is undisputed that the odor of gasoline was pungent and strong and was easily detected upon immediate entry into the building from the street. Public safety and welfare must, of necessity, be the primary concern of the courts in administering true and fair justice. It was the duty and obligation of the firemen and the police, under the circumstances, to reduce the hazard to life, limb and property not only of this defendant, but to all the other tenants in the building as well. The facts and circumstances surrounding the incident do not suggest a violation of any of the constitutional guarantees of the defendant against his right of privacy, and protection against an illegal search and seizure. To suggest that prior to entering the apartment the firemen and police should have procured a search warrant is unwarranted. When the firemen appeared at the scene they undoubtedly concluded that a public emergency existed and they feared for the safety and welfare of every person within the immediate area. They were the ones who entered the defendant’s apartment through the window. The police had not then appeared in the apartment and were there by virtue of the long-established practice that the police respond to a fire call, for any assistance they may be in a position to give and to preserve law and order. *910 Patrolman Kelly entered the apartment through the door that had been opened from the inside by a fireman. JSTo law enforcement officer was involved in an unlawful entry into the apartment.
Battalion Chief O’Brien, a member of the Fire Department for 23 years and a Chief for 8 years, testified that just before he went into the apartment, it was his opinion that11 a condition existed dangerous to life and property, that there was danger of an immediate explosion.”
This court has always been a jealous guardian of the fundamental and constitutional guarantees against unreasonable searches. We frown upon searches without benefit of warrants that would reduce the Fourth Amendment of our Federal Constitution to a nullity and leave the people’s homes secure only in the discretion of police officers. As stated by Mr. Justice Jackson in Johnson v. United States (supra, p. 14): “ Crime, even in the privacy of one’s own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also of grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.”
In the instant case, access to the home of the defendant was not gained by any police officer, but was accomplished by members of the Fire Department of our city, who, in the course of their duties and in the face of what their superior officer determined to be an emergency and an imminent dangerous and explosive situation, perhaps involving possible death and destruction, adopted precautionary, logical, prudent and rational measures. They entered the apartment through a window, not knowing if anyone was present therein, and their fears and apprehension were justified by what they observed. A strong odor of gasoline permeated the apartment area, with gasoline-soaked clothes on the floor, gasoline running on the floor and the bed saturated with gasoline. Indeed, at this point, no police officers were involved. Patrolman Kelly made his presence known only when Chief 0 ’Brien ordered that the police be called. Then, and only then, did the police officer perform his duty as a law enforcement agent. Upon placing the defendant under arrest for attempted arson, contraband in the form of two pistols, one of which was loaded, a quantity of ammunition and narcotics, was found.
*911 Clearly, in view of the facts and circumstances herein, the defendant’s right of privacy was not violated by any law enforcement officer. The Fire Department saw its duty, and did it. The police officer, entering the apartment through an open door, responded to his call of duty without violating any of the constitutional guarantees to which the defendant was entitled, and conducted a search that was incidental to a lawful arrest for attempted arson. An abundant opportunity to obtain a search warrant did not exist, since there was a probability of a material change in the situation during the time necessary to secure such warrant.
This court holds that an entry into private premises by a public officer, without a search warrant, in pursuance of the authority of law to protect life and property and for the purpose of eliminating a hazard immediately dangerous to health and public safety is constitutionally valid if the purpose be summary and necessary under the exigencies of the circumstances. Hence, if upon such entry, contraband is revealed, the arrest is lawful and proper, and a search of the premises following such arrest, is incidental to the arrest.
Accordingly, the motion to suppress the evidence and for an order excluding such evidence is denied in all respects.