Breitel, J.
There are two issues raised on this appeal from defendant’s conviction for unlawful possession of a firearm under section 1897 of the old Penal Law and his sentence as a third felony offender. The first is whether there was probable cause for the initial detention and frisk and the ensuing search of his person and arrest. The second is whether the trial *690 court’s alleged misunderstanding of a legal defense to the crime charged resulted in prejudicial error. Defendant appeals from the denial of his motion to suppress evidence obtained on the search of his person and arrest (Code Crim. Pro., § 813-c) as well as from the conviction after trial.
It is concluded that there was probable cause for each of the police steps taken by the arresting officer and that no prejudicial error occurred on the trial. Consequently, the judgment of conviction should be affirmed.
On Saturday, March 19, 1966, in the early evening, Patrolman McCarthy was on foot patrol in uniform on a busy thoroughfare in Queens County. A passerby told him of an occurrence, involving a man with a pistol, as a result of which the officer proceeded to a nearby intersection and then to two stores, a dairy and a bar. Patrons in the bar told him that a man outside the bar had discharged a pistol or firecrackers. The bar patrons had described the man with the gun as five foot, six or seven, blonde, and wearing a blue or dark jacket. Outside the bar another passerby pointed to defendant and stated that he was the man with the gun. Defendant fitted the description previously given to the officer.
When pointed out by the second passerby defendant was about to enter a taxicab. The officer called to him to stop, which defendant did. The officer then told him to place his hands on the taxicab. Defendant was frisked by patting the outside of his clothing and the officer felt a gun on his belt. He then reached in and removed a .25 calibre automatic pistol from a holster held by defendant’s belt through a loop in the holster. The pistol contained three live cartridges.
Patrolman McCarthy never obtained the names of the passersby or the co-operation of the persons in the bar who had informed him of defendant’s possession or use of the pistol. Some of the patrons in the bar were evidently known both to defendant and the police officer, according to the testimony of each. In any event, they were not called as witnesses. On this ground, defendant argues that there was insufficient cause for the initial detention and subsequent police action.
The Supreme Court has recognized, as indeed has this court, the reasonableness of police conduct in effecting a limited search of persons in the absence of probable cause for arrest for *691 a chargeable crime (Terry v. Ohio, 392 U. S. 1, esp. at pp. 26-27; People v. Taggart, 20 N Y 2d 335, 339-340; see Code Crim. Pro., § 180-a, and comments thereon in Sibron v. New York, 392 U. S. 40, 59-62, and esp. n. 20 at pp. 60-61). And, of course, if the police conduct is reasonable it does not offend constitutional limitations and the evidence obtained as a result of such conduct is admissible (Terry v. Ohio, supra). (See A. L. I. Model Code of Pre-Arraignment Procedure [Tent. Dr. No. 2, April 15, 1969], § 2.02, subd. [1], par. [a], cl. [ii] ; subd. [4].)
Because the police officer in this case in stopping and frisking defendant did not observe directly the prior conduct of defendant and relied on the information of the bar patrons and the two unidentified passersby, this case does not fall within the pattern of the Terry case (supra) and is more like the situation that obtained in the Taggart case (supra). But the circumstances here are considerably stronger than they were in the Taggart case. There, the police officer acting on a single anonymous telephone call received at the station house describing the defendant, went to a street location, and without a prior limited frisk placed the defendant against a wall and thrust his hand inside the defendant’s jacket and removed the offending firearm. The search and arrest were sustained as valid, in part , because of exigent circumstances and because a weapon dangerous to the investigating police officer and the public was involved.
In this case, the police officer had first received information about a man with a gun from the initial passerby. After visiting a dairy store, the officer went to the adjacent bar and was told conflicting stories by patrons of a man discharging a gun or firecrackers. The man was described as to height, hair color, and clothing. Outside the bar, the second passerby pointed to defendant, who fitted the description. The officer then stopped the defendant and conducted a limited search by a frisk, that is, by patting down the outer surfaces of defendant’s clothing. This limited search verifying the presence of a gun, was followed by the more intrusive search, similar to that in the Taggart case, which yielded the loaded weapon.
While it is unfortunate that the foot patrolman had neither the time before nor the opportunity later to obtain the identity *692 of the passersby or the co-operation of the bar patrons, who witnessed defendant’s prior behavior, his pre-arrest procedure was not only permissible but mandatory in view of the complaints made to him. This was indeed the kind of street encounter involving a weapon dangerous to him and to others for which it would have been grossly unreasonable for him to have acted otherwise. This is true although the officer had no probable cause for arrest for a chargeable crime until he had found the weapon, by frisk or by further search, and then only if the possession was unlicensed, a fact not ascertainable until after full detention and interrogation of the defendant.
As the Supreme Court stated in the Terry case (supra) : “ Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for .a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger [citations omitted]. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or ‘ hunch ’, but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience ” (392 U. S. 1, 27, supra).
The police officer in this case did not act on inchoate or unparticularized suspicion or on a hunch. He was given detailed, specific, largely concurring information by a number of individuals, who because of their physical separation were not likely to have been acting in concert. The information, in part from anonymous sources it is true, dovetailed. It would take extraordinary coincidence to have produced such concurrent stories without objective basis for them. Hence, the officer was bound to act as he did.
Of course, the absence of the patrolman’s informants makes it impossible to verify the fact that there were such informants or that they gave the information he ascribed to them. But *693 it would be requiring the impossible that in all street encounters, however brief and evanescent, the police officer must obtain documentation or witnesses to verify his every act. Moreover, it is not tenable that a police officer’s word should be so suspect, even in the sensitive area of search and seizure, that it may not be accepted unless corroborated like that of an accomplice criminal or complainant in a sex crime. Such corroboration is of course not required, anymore than it was required in the Terry or Peters cases, where the preceding observations which justified the later searches and the arrests were solely those of the police officers (Terry v. Ohio, 392 U. S. 1, 5-7, 28, supra; Sibron v. New York [Peters v. New York], 392 U. S. 40, 48-49, 66, supra).
Of course, this case does not present the same problem as that considered in People v. Malinsky (15 N Y 2d 86) in which the otherwise unsupported testimony of a police officer depended upon an unnamed confidential informant whose identity the police were unwilling to disclose, an unwillingness not present in this case. Generally, the rules as to undisclosed confidential informants involve different and special considerations and applications (see McCray v. Illinois, 386 U. S. 300; People v. Coffey, 12 N Y 2d 443, cert. den. 376 U. S. 916). The further difference in this case is that the aggregate of coincidental information given by the two passersby and the bar patrons constituted a circumstantial basis, providing probable cause and about which the police officer could testify from his own knowledge and be cross-examined. Moreover, on cross-examination he identified by first names and nicknames some of the bar patrons; but even this was not necessary, for the record reveals that the bar patrons were known to the defendant, and evidently he had no more luck in obtaining their co-operation than did the police officer.
It is not necessary, of course, in this case to determine whether information spontaneously provided in a street incident by a single civilian as bystander or alleged victim, who is later unavailable or unidentifiable, might provide probable cause for appropriate police action. Obviously there may be circumstances in which such action, such as stop, frisk, search, and even full arrest for a chargeable crime, would be reasonable, let alone mandated on a peace officer. (See State v. Hoover, 219 *694 Ore. 288; see, generally, Ann.: Search and Seizure Before Arrest, 89 A L R 2d 715, 780-798.)
Consequently, there was probable cause for the police officer to detain, frisk, and then make a further search of defendant’s person. The arrest was, therefore, proper and the evidence obtained admissible.
The second issue raised by defendant concerned the trial court’s expressions that, regardless of how defendant came into possession of the pistol, admitted by him, he would be guilty of a crime of illegal possession. His explanation, upon the trial, was that another had used the pistol during an altercation with defendant and that he had disarmed his adversary, taking the pistol’s holster as well. He said he intended to turn the weapon over to the police, and was on his way to do so.
Twice during the trial, before the court without a jury, the Trial Judge expressed the view about which defendant complains. If this indeed were the court’s view and it affected the result, there was prejudicial error (People v. La Pella, 272 N. Y. 81; People v. Furey, 13 A D 2d 412). However, if error there was, it was harmless.
The first time the Trial Judge made the comment he was correct. Defendant’s counsel was cross-examining the police officer on the voir dire or preliminary examination on the People’s offer of the pistol into evidence. At that time, it was immaterial how the weapon came into defendant’s possession. It was enough that it was discovered on him to lay a foundation for its admission.
Later, however, on cross-examination proper of the police officer, defendant’s counsel asked him if anyone had told him that another than defendant had first possessed the weapon. The question was answered in the negative. The trial court then said: ‘1 Mr. McDonald, if what you are trying to show is that this gun was in somebody’s else’s possession at sometime prior, it has absolutely nothing to do with the charge against this defendant. The charge against this defendant is whether or not at the time he had in his possession an operable, dangerous weapon pursuant to 1897 of the Penal Law.” Counsel made no comment and the examination proceeded. Defendant had not yet testified. When he did he told his full story without restraint to the effect noted above, namely, that he obtained *695 the weapon by disarming an unidentified adversary and was going to turn it over to the police. In the trial court’s decision particular note was made that the defendant had admitted possession of the firearm with ammunition. Nothing was said of the applicable defense by the court, but the prosecutor had argued that defendant had lied on the stand and was incredible.
Indeed, defendant’s story was contradictory and incredible. He claimed to have taken the holster as well as the pistol from his adversary. Of course, there was no need to take the holster too. More important, defendant testified that he “threw” the pistol and holster “inside” his “jacket”; but on cross-examination he said he had “jammed” the gun between his belt and his trousers. In short, assuming that the court had an erroneous view of the availability of the defense, the defense was without credible' support examined solely within the corners of defendant’s testimony.
In this analysis, the police officer’s testimony that on the search and arrest defendant cried out to bystanders that the officer was planting a gun on him is disregarded. But on the issue of fact for the trial court this was salient contradiction of the defendant’s version. Internally inconsistent to begin with, defendant’s version neither answered nor took account of the policeman’s testimony and left the purported defense rejected on any theory. Moreover, the police officer testified that the holster was looped on the belt, and the gun was in the holster when he searched and arrested defendant. He also testified that he did not remove the holster from the defendant until they reached the police station, because he did not want to have defendant unbelted on the public street. Consequently, on the whole proof defendant’s version was deprived of any possible credibility.
Hence, there was no prejudicial error upon the trial.
Accordingly, the judgment of conviction should be affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Jasen concur; Judge Keating taking no part.
Judgment affirmed.