Joel J. Tyleb, J.
The fact situation in this case appears to be one unreported in this State; and, accordingly, may possibly be one of first impression.
Defendant is charged with the illegal possession of a loaded hand gun in violation of section 265.05 of the Penal Law.
' The defendant moves for the suppression of the contraband, in that, the officer had no probable cause to search his person. Upon the hearing of the motion, arresting Detective Forte, the People’s sole witness, testified that, under the authority of a no-knock search warrant, he and several brother officers entered a certain apartment, designated in the warrant, to search for narcotics. The warrant directed also the search of the named female occupant. The officers entered the apartment with guns drawn, and as Officer Forte so entered the first room — the living room — he confronted the said female and he also saw defendant standing at the threshold between that room and the kitchen, with arms held erect over his head. He then patted down defendant’s clothing, “for my protection,” as the officer stated, discovered the gun as a result thereof, removed it from defendant’s person, and arrested him.
Defendant, as the sole witness on his own behalf, essentially confirmed the officer’s testimony. It varies only, in that, defendant claims to have driven home the female occupant of the apartment that evening, and upon her invitation, he went into the apartment to sup with her. While he was so engaged in the kitchen, the officers entered and Officer Forte ordered him to stand, with one hand against the wall, the other raised, whereupon he was frisked and the gun discovered.
Admittedly, neither the search warrant nor the supporting affidavit upon which its issuance was justified, named the defendant. The only person named therein to be searched was the female tenant. The warrant, however, did permit the search [1] ‘ of any other person who may be found ’ ’ in the premises to possess heroin, under the aegis of subdivision 2 of GPL 690.15. Neither the warrant nor its supporting affidavit was introduced in evidence. The validity of the warrant is not in question.
*268 THE ISSUES
The position of the defendant, succinctly, is as follows:
1. Since the warrant and its supporting affidavit were not placed in evidence, the court may not consider them and, particularly, cannot do so in the light of the conceded validity of the warrant. Of course, the court seeks to examine them to ascertain the extent of the warrant’s authority, if any, as it relates to defendant.
2. The police acted illegally in frisking the defendant, in that, such action, not predicated upon probable cause, constituted an unreasonable search, condemned by the Fourth Amendment.
3. Subdivision 2 of CPL 690.15 insofar as it permits the extension of a search under a warrant, to “ any other person who may be found” in specified premises is unconstitutional under the Fourth Amendment, and in conflict with CPL 690.15 (subd. 1, par. [c]) and subdivision 4 of CPL 690.45 which require particularization of the persons to be seized and searched.
I
THE COURT TAKES JUDICIAL NOTICE OF THE WARRANT
It is unfortunate that the prosecution failed to introduce into evidence the warrant and its supporting affidavit. But the existence thereof was made known to the court in at least two respects. The officer testified concerning it, without objection, and the complaint clearly alludes to it, by indicating that the search was made “ under the authority of a search warrant.”
It would violate sound sense to prohibit the courts’ examination of these necessary documents. Truth abhors mystery, and “ a right sense of justice ” (People v. Rosario, 9 N Y 2d 286, 289 [1961]) impels to the logic and militates for full disclosure in the ascertainment of the facts. (People v. Graf, 59 Misc 2d 61, 65 [1969].) This basic logicality has been recognized and given support by the courts and legal scholars, as it relates to our situation, by establishing the principle that a court may take judicial notice of “ all prior proceedings in the case,” notwithstanding that some of those proceedings were held in another court of the State.[1] (United States v. Casino, . 286 F. 976 [1923]; Susquehanna Silk Mills v. Rebora, 238 App. Div. 100, 103 [1st Dept., 1933], revd. other grounds 263 N. Y. 539; Kane v. Walsh, 295 N. Y. 198, 204 [1946]; CPLR 4511; 9 Wigmore, Evidence [3d ed.], § 2579; 1 Wharton’s Criminal Evidence [12 ed.], § 64; 1 Mottla, New York Evidence, § 283.)
*269 Accordingly, this court has taken judicial notice of these documents and has examined the warrant and supporting affidavit, which was sworn to by the testifying officer, Forte.
n
THE SEARCH WAS REASONABLE UNDER THE CIRCUMSTANCES AND CONFORMS WITH CONSTITUTIONAL MANDATES
The Fourth Amendment of our Federal Constitution and section 12 of article I of our conforming New York Constitution clearly prohibit only those searches and seizures deemed “unreasonable.” (Elkins v. United States, 364 U. S. 206, 222 [1960]; People v. Taggart, 20 N. Y. 335, 340 [1967].) This wholesome limitation was conceived to guarantee “ a right of personal security against arbitrary intrusions by official power.” (Coolidge v. New Hampshire, 403 U. S. 443, 455 [1971]; Wolf v. Colorado, 338 U. S. 25, 27-28 [1949]; also, Chimel v. California, 395 U. S. 752, 760-761 [1969].)
It is a “basic constitutional rule ” (Coolidge v. New Hampshire, supra, p. 454) and a natural consequence of the clear language of these constitutional mandates, that warrantless searches ‘ ‘ are per se unreasonable * * * subject only to a few specifically established and well-delineated exceptions.” (Katz v. United States, 389 U. S. 347, 357 [1967].) We have been further instructed by our highest tribunal, that a warrant-less search may be excused and permitted, as one such ‘1 well-defined exception,” where “ the exigencies of the situation made that course imperative.” (McDonald v. United States, 335 U. S. 451, 456 [1948]; Trupiano v. United States, 334 U. S. 699, 705, 708 [1948]; United States v. Jeffers, 342 U. S. 48, 52 [1951]; Miller v. United States, 357 U. S. 301, 313 [1958]; Terry v. Ohio, 392 U. S. 1, 17-18, n. 15; pp. 19-20 [1968].)
What then is the quality and measure of such exigent circumstances, which would justify a warrantless search and constitute a permissible exception to the requirement of a warrant? Firstly, we must begin with the oft-repeated premise that there is no firm, fast and unchanging criteria to determine the limits of a reasonable search or the exceptions that would allow it without a prerequisite warrant. As Mr. Justice Black aptly stated, “ Each case must be judged on its own particular facts.” (Coolidge v. New Hampshire, 403 U. S. 443, 503-504, 509-510, supra; Chimel v. California, 395 U. S. 752, 765, supra; Terry v. Ohio, 392 U. S. 1, 15, supra.)
Further, as it applies to our case, Mr. Justice Stewart supplies an answer to our question, when he reminds us that one *270 such exigency, giving rise to such well-delineated exception, “ arises from the dangers of harm to the arresting officer.” (Coolidge v. New Hampshire, 403 U. S. 443, 478, supra.)[2] In this connection, we should ndi close our eyes to the actualities and practicalities of a specific confrontation faced by the officer in performing his hazardous public duty. (People v. Rivera, 14 N Y 2d 441, 446 [1964], cert. den. 379 U. S. 978; People v. Rosemond, 26 N Y 2d 101, 104 [1970].) What is unusual enough to call for action must rest in the professional experience of the police. Since encounters with police and citizens are ‘1 incredibly rich in diversity” (Terry v. Ohio, 392 U. S. 1, 13, supra), we should not readily succumb to second-guessing, but rather we must judge the facts before us in the light of constitutional requirements.
The courts have long recognized that a policeman may and should, as a matter of right, take every reasonable precaution to assure his own safety and that of others. Accordingly, he may search for weapons (without a warrant), a person lawfully arrested. (Weeks v. United States, 232 U. S. 383, 392 [1914]; Agnello v. United States, 269 U. S. 20, 30 [1925]; Preston v. United States, 376 U. S. 364, 367 [1964]; Chimel v. California, 395 U. S. 752, 762-763, supra.) He may extend such warrantless search from the arrestee’s person to any area ‘11 within his immediate control ’ — construing that phrase to mean the area from within which he might gain possession of a weapon ”. (Chimel v. California, supra, pp. 763, 766; Warden v. Hayden, 387 U. S. 294 [1967].)[3]
*271 Further, the public and governmental concern for the protection of the police officer, under circumstances which may tend to expose him to serious injury, represents the thrust, purpose and rationale of our stop and frisk statute, permitting a warrantless search to disarm a possible assailant of “a deadly weapon or any instrument, article or substance readily capable of causing serious physical injury”' (CPL [former] 140.50, subd. 2). (Terry v. Ohio, 392 U. S. 1, supra; Sibron v. New York, 392 U. S. 40, 63 [1968]; People v. Peters, 18 N Y 2d 238, 243 [1966], affd. sub nom. Sibron v. New York, 392 U. S. 40.) But where the frisk is not for a weapon, but for narcotics (or other possible contraband) it is impermissible. (Sibron v. New York, supra; People v. Taggart, 20 N. Y. 335, 340, supra.)
Although our stop and frisk statute applies tó activity abroad “in a public place” (CPL 140.50, subd. 1), subdivision 2 of CPL 690.15 appears to authorize a similar frisk in a nonpublic place (such as an apartment as here involved) upon a legal entry.[4] If we accept, arguendo, defendant’s position that the latter statute is unconstitutional, we should, if possible, nevertheless, proceed upon other grounds in considering the validity of the frisk. A search not expressly authorized by State law may, nevertheless, be justified as a constitutionally reasonable one. (Cooper v. California, 386 U. S. 58, 61 [1967]; Sibron v. New York, 392 U. S. 40, 61-62, supra.) Accordingly, in determining the legality of the search in this case, we proceed solely with a consideration of the aforesaid Federal and State constitutional requirements, and not upon the basis of any State statute.[5] Such requirements draw no distinction as to the place of the search, but rather the question of its reasonableness is predicated, and the search validated, as aforesaid, upon the *272 exigencies justifying its initiation, then and wherever present. This legal postulate applies with equal validity to a street confrontation as it does in a confined and private area, present a legal entrance. (Terry v. Ohio, 395 U. S. 1, 17-18, n. 15; p. 27, supra; People v. Rivera, 14 N Y 2d 441, supra.)[6] These constitutional requirements were not conceived with intent to seriously limit or prevent reasonable and necessary law enforcement, notwithstanding, the erroneous conceptual impediments some seek with which to encumber their clear meaning.
The defendant argues that had the officer (already with gun drawn) first made reasonable inquiries of the defendant, as the logic of the confrontation indicated, there would have been no need for the frisk, since the answers thereto would have satisfied the officer. In People v. Rivera (14 N Y 2d 441, supra); People v. Taggart (20 N. Y. 335, supra); People v. Peters (18 N Y 2d 238, supra); People v. Teams (20 A D 2d 803 [1964]) and more recently in Adams v. Williams (407 U. S. 143 [1972]) and many others, and as in this case, the circumstances were such that it would have been foolhardy and an unnecessary exposure to real danger to question the defendant, in any way, prior to the pat-down, lest, ‘ ‘ the answer to the question propounded by the policeman may be a bullet ’ \ (People v. Rivera, supra, p. 446.)[7] In the instant case, and in the variety of other situations similarly fraught with potential dangers ‘ ‘ the tables are easily turned ”, especially if the suspect possesses a dangerous weapon. (People v. Peters, supra, p. 245; Peters v. New York, 392 U. S. 40, 66 [1968].)
It is worthy of repetition and emphasis, for the sake of clarity, to understand that the judicial scrutiny here must be directed and judged against this standard: “would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief ’ that the action was appropriate.” (Terry v. Ohio, 392 U. S. 1, 21, supra.) What is appropriate certainly would point to the — “ immediate inter *273 est of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally he used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. * * * The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.” (Terry v. Ohio, supra, pp. 23, 27.)
In arriving at that reasonable “ belief,” the officer is expected to give credence, states the court in Terry (supra, p. 27) “to the specific reasonable inferences which he is entitled to draw from the facts in the light of his experience.”
Mr. Justice Harlax, in his concurring opinion in Terry (supra, pp. 31-32), emphasizes that the right to frisk does not depend upon the existence of the concepts of probable cause, but rather upon the “necessity of the situation” then faced by the officer, and as he credibly relates them in court, which “ could well warrant action on less than a ‘ probability.’ ”[8]
Neither counsel nor the court succeeded in finding any reported case in this State which presented a fact pattern similar to the instant case. However, elsewhere, similar circumstances were presented. In People v. Pugh (69 Ill. App. 2d 312 [1966]), the police were in premises under a search warrant, which did not name defendant. Defendant later entered the premises, was searched and found in possession of narcotics. The court, in approving the search, both under a specific Hlinois statute permitting the search of anyone in premises being searched under a warrant, and also, more importantly, under the Fourth Amend *274 ment, stated: “We agree with the State that the execution of search warrants in narcotics cases is a risky business at best, and unless police search all persons present on the premises they endanger both themselves and the search they are making.” (Also Samuel v. State, 222 So. 2d 3 [Fla., 1969]; Guzman v. State, 461 S. W. 2d 602 [Tex., 1970]; Willis v. State, 122 Ga. App. 455 [Ga., 1970].)
In applying the foregoing principles, we necessarily arrive at the unavoidable conclusion that the frisk of the defendant here was an exercise of common sense and practiced good judgment. The officer’s “actions did not come into conflict with any constitutional restraints, as interpreted by the precedents. To the contrary, had he acted otherwise, he would have been subject to criticism for dereliction of a plain duty.” (People v. Fenuta, 39 A D 2d 674, 675 [1st Dept., 1972]).
The officer entered upon a situation inherently fraught with extraordinary danger to himself and his colleagues. The affidavit filed in support of the warrant reveals that a confidential informant had seen the female, against whom the warrant was directed, in possession of a pistol; he had further seen said female in the subject apartment in possession of a large quantity of heroin and saw the narcotic being sold by that female to others; the affiant officer affirmed that he saw known addicts enter the apartment and remain a short period of time. The affidavit further indicates that the confidential informant was questioned personally by the Justice; who surely found confirmation, to his satisfaction, of these statements, since he subsequently issued the warrant.
It is generally known by the police and others that those who traffic in large quantities of narcotics are often armed. Officer Forte was also apparently cognizant of this possibility when he frisked the defendant, “ for my protection ”, as he testified. The mere presence of a person or persons in such an environment, presents that reasonable suspicion and belief, which gives rise to sufficient and legal justification to frisk all present for weapons, at the very least. Indeed, the correctness of the belief was borne out by the discovery of a loaded weapon. We cannot, in deciding what is reasonable, close our eyes to the realities of the danger of police duty, viewed in the context of such a dire situation. (People v. Rivera, 14 N Y 2d 441, 446, supra.)
The burden focused on the People to demonstrate, by a preponderance of the evidence, that the exigencies present impelled the officer’s course of action. (McDonald v. United States, 335 U. S. 451, 454, supra; Miller v. United States, 357 U. S. 301, *275 313, supra; Lego v. Twomey, 404 U. S. 477, 488-489 [1972].) The prosecution clearly satisfied that responsibility.
The motion, being disposed of on constitutional grounds, the determination of the validity of subdivision 2 of GPL 690.15 is unnecessary and academic. Furthermore, a nisi prius court should not pass on a statute’s constitutionality “if there is any other way of disposing of the case ” and should not declare a statute unconstitutional unless required to do so by the most cogent and compelling reasons. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150, Bohling v. Corsi, 204 Misc. 778, 783 [1953], affd. 306 N. Y. 815, app. dsmd. 348 U. S. 802; People v. Pagnotta, 25 N Y 2d 333, 337 [1969]; People v. Block, 71 Misc 2d 714, 715 [1972].)
Accordingly, this motion to suppress, is denied.

. Here the warrant was signed not by a Judge of this court, but rather by a Justice of the Supreme Court, sitting in this — Bronx County, and filed in its Clerk’s office.

. Exigent circumstances, sanctioning warrantless searches, take also other forms, including: searches of auto, ship, boats or wagons where “it is not practical to secure a warrant.” (Carroll v. United States, 267 U. S. 132, 153; Chambers v. Maroney, 399 U. S. 42, 51; a search incident to a lawful arrest, Marron v. United States, 275 U. S. 192; Chimel v. California, 395 U. S. 752; or arising from a “hot pursuit ” search for a felon, Warden v. Hayden, 387 U. S. 294; or street, stop-frisk searches, Terry v. Ohio, 392 U. S. 1; Sibron v. New York, 392 U. S. 40; or where the removal or destruction of contraband is threatened, Johnson v. United States, 333 U. S. 10, 14-15; or other extraneous valid reasons for the officer’s presence in the premises and his subsequent accidental discovery of contraband. (Camara v. Municipal Ct., 387 U. S. 523; See v. City of Seattle, 387 U. S. 541; Ker v. California, 374 U. S. 23; United States v. Barone, 330 F. 2d 543; People v. Johnson, 48 Misc 2d 907.)

. In Warden v. Mayden (387 TJ. S. 294), the court again recognized the prime and legitimate public concern to secure police officers from harm, by authorizing a warrantless search for “all weapons”. There the police entered and searched a house in hot pursuit of a fleeing armed robber. The court pointed out that “speed, here was essential, and only a thordugh search * * * for * * * weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be Used against them ” (p. 299).

. Subdivision 2 of CPL 690.15 (also here in issue) is a new provision, effective September 1, 1971 and its constitutionality is yet to be tested. It permits — '“A search warrant which directs a search of a designated or described place, premises or vehicle, may also direct a search of any person present thereat or therein."

. People v. Rivera (14 N Y 2d 441, cert. den. 379 U. S. 978) arose prior to the enactment of our stop-frisk statute and was primarily treated under the general Fourth Amendment principles of the validity of police action, although stop and frisk concepts were also discussed, since it involved an on-street confrontation. In discussing, generally, search and seizure problems, the court declared (p. 448): “ A State is not precluded from ‘ developing workable rules ’ governing searches to meet ‘the practical demands of effective criminal investigation and law enforcement’ if the State does not violate the constitutional standard of what is reasonable (Ker v. California, 374 U. S. 23, 24).” I submit that the decision in subject case, sanctioning the police frisk, upon legal entry, of all present within premises to be searched for narcotics, is such a workable rule and is within constitutional restraints.

. The necessity for declaring such an exception to the Fourth Amendment is a logical extension in the light of the realities of police work, which has resulted in a great incidence of murders of policemen. Terry v. Ohio (392 U. S. 1, 24, n. 21, supra) and Adams v. Williams (407 U. S. 143, 148, n. 3) present some distressing national statistics in this connection. In New York City, alone, 7 policemen were killed in the line of duty in 1970, 10 in 1971 and 8 in the first 8 months of 1972. (New York Times, Oct. 2, 1972, p. 73.)

. Mr. Justice Hablan in his concurring opinion in Terry v. Ohio (392 U. S. 1, 33, supra), would also' permit the search first and questioning later, when he stated: " There is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have, to ask one question and take the risk that the answer might be a bullet.”

. The critics say that the definition of “ probable cause ” as that of “ obscenity” is often dependent upon the unintended but, nevertheless, present predilections of the jurist who must deal with it. Here, as obtains in so many other areas of jurisprudence, we evoke the untiring wisdom of “ the reasonable man,” and ask him to apply his logic to determine the meaning of these terms. Such cynical criticism reveals an ignorance of the heritage of legal principles, which finds perpetuating force and viability in broad, not narrow confinements, permitting new and differing applications with society’s forever changing and modulating needs. And from that logic, the courts have equated “ probable cause ” with “ reasonable grounds for belief.” . (Brinegar v. United States, 338 U. S. 160, 175; Jones v. United States, 362 U. S. 257, 269; United States v. Heitner, 149 F. 2d 105, 106, cert, deni sub nom. Cryne v. United States, 326 U. S. 727.) The term, probable cause, “is not a matter for technical rules or tight exact definition. The question always is: what in the common judgment of reasonable men would be regarded as good, sound cause, remembering that we seek only probable, not absolute cause?” (People v. Marshall, 13 N Y 2d 28, 34; also People v. Tolentino, 40 A D 2d 596).