■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEROY KINLOCK, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered April 18, 1974, convicting him of attempted possession of a weapon, etc., as a felony, on his plea of guilty, and imposing sentence. The appeal also brings up for review an order of the same court, dated March 5, 1974, which denied defendant's motion to suppress physical evidence. Judgment and order affirmed. At the suppression hearing, the arresting officer testified that on December 31, 1973 he had "received an anonymous phone call describing a male Negro, approximately six foot, with a long plaid coat with a fur collar on 142nd and Rockaway Boulevard, supposed to have a rifle, by the name of Leroy." Upon proceeding to the precise location given, the officer spotted a man fitting the description and asked him whether his name was Leroy. When the man replied affirmatively, the officer patted him down and thereby discovered a rifle. It is unclear from the testimony of the arresting officer whether the anonymous caller said that the suspect was "supposed" to have a rifle, or whether the word "supposed" was simply interjected into the testimony of the officer as his way of stating that he had received a report of a man with rifle. In any event, the officer was warranted in investigating the report and his independent observations corroborated the information received, both as to the description of the suspect and as to the location where he could be found. Further corroboration was provided by the suspect's affirmative answer when asked whether his name was Leroy. At that point in time the investigating officer had an ample basis for crediting the anonymous call; elementary considerations of safety were sufficient to justify the pat-down undertaken (see *Terry v Ohio*, 392 US 1, 23; *People v Wynn*, 54 AD2d 366). Margett, Damiani and Rabin, JJ., concur; Cohalan, Acting P. J., dissents and votes to reverse the order and judgment, grant the motion to suppress, and dismiss the indictment, with the following memorandum, in which Hawkins, J., concurs: In the late afternoon of New Year's Eve of 1973, a duty officer in

a Queens precinct received an anonymous telephone call. The information given was that Leroy, a six foot black male wearing a long plaid coat with a fur collar, was at 142nd Street and Rockaway Boulevard and was "supposed" to have a rifle. The police officer and his partner proceeded to the Rockaway Boulevard location and saw a man answering the description given over the telephone. Upon accosting defendant they asked him if he was named Leroy, to which he answered affirmatively. They did not ask him for his address, or for an explanation of his conduct as suggested by CPL 140.50. Instead, and without any further questioning, Leroy was patted down. A sawed-off .22 caliber rifle was found in his left trouser leg. No bulge revealed the presence of the gun before the pat-down. Defendant's motion to suppress the evidence was denied. The guilty plea followed. On this appeal the People place their main reliance on certain cases discussed in the trial court's opinion at the suppression hearing, namely, *People v Taggart* (20 NY2d 335), *People v Mack* (26 NY2d 311) and *People v Arthurs* (24 NY2d 688). All three cases were decided pursuant to subdivision 1 of section 180-a of the Code of Criminal Procedure, which was similar in content to CPL 140.50 (subd 1), as presently constituted. The three-cited cases are readily distinguishable. In *Taggart (supra)*, the police received an anonymous telephone tip that a certain person, 18 years of age, with blue eyes and blond hair, wearing chino-type pants, had a loaded .32 caliber revolver in his left jacket pocket. This was a positive statement, not that he was "supposed" to have such a weapon. Upon investigation the police found the defendant, who "was standing in the middle of a group of children". Under the "Stop and Frisk" law, a divided court held the search to be reasonable on the ground that: "There are exigencies affecting life, limb or grave property damage in which the police receive information of crime, not sufficient to establish probable cause for arrest and incidental search, and yet which, to any reasonable man, demand the taking of police action to prevent serious harm" *(People v Taggart, supra, p 339)*. At bar there were no exigent circumstances. "Leroy" was minding his own business and was walking the public street in a perfectly legal manner. He was not standing amid or near any group of children—or adults—as would make him a potential danger to anybody. *Arthurs (supra)* is stronger than *Taggart* from the People's point of view, but weaker from the defendant's. In *Arthurs,* two separate passersby told a police officer that defendant had an operable gun and patrons in a nearby bar said the same man had discharged a pistol or firecracker. All of the informants gave a similar description of the perpetrator. This, too, is markedly unlike the instant set of facts. And finally, in *Mack (supra),* while two police officers sat in an unmarked car, two uniformed officers in a radio patrol car stopped to tell them that three burglaries had been committed in the area that day, and that two black males (describing them) had been seen in the vicinity. Within minutes after the patrol car left, the plainclothes men saw two men who answered the description acting in a very suspicious manner, in the course of which they walked into and exited from two apartment buildings. When arrested, Mack was found to have a revolver in his right coat pocket. Again there is a marked distinction between *Mack* and the instant case. Kinlock was not among a crowd of children, as was Taggart. He did nothing affirmatively illegal, as did Arthurs; and there was certainly nothing furtive about his actions, as there was about Mack's. The facts and circumstances before us more nearly fit those in *People v La Pene* (40 NY2d 210). There, as the result of an anonymous tip, the police entered a bar and grill in search of a man in possession of a gun, who was wearing a red shirt which was not tucked into his trousers. They entered the premises

and, without investigation, approached and arrested a person so dressed. The resulting indictment was dismissed by the Court of Appeals (see, also, *People v Horowitz,* 21 NY2d 55 and *People v Wynn,* 54 AD2d 366).