### State of Vermont v. James L. Miller

[451 A.2d 1115]

No. 78-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed September 7, 1982

*Mark J. Keller,* Chittenden County State's Attorney, *Harold E. Eaton,* Chief Deputy State's Attorney, and *Nancy G. Sheahan,* Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Thomas B. Bailey* of *Hoff, Wilson, Powell & Lang, P.C.,* Burlington, for Defendant-Appellant.

Barney, C.J. The defendant was convicted of unlawful possession of marijuana under 18 V.S.A. § 4224(a), after a trial by court. His conviction was based on evidence pulled from his pocket during a search claimed to be unconstitutional. The defendant's attempt to have the evidence suppressed or excluded on those grounds was denied. He now appeals the conviction on the grounds that the evidence against him was unconstitutionally obtained and therefore admitted in error.

Starting about 12:30 in the morning on October 24, 1980, officers of the Winooski Police Department were carrying out a search, under warrant, of an apartment on West Lane for evidence of drug sales. At about 1:30 a.m. the defendant, having been invited to spend the night, knocked on the door, unaware of the police activity within. Someone said "Come in," and he entered carrying a suitcase, a laundry bag and a plastic bag of household utensils. On entering he was patted down and frisked. A pipe with marijuana residue and a cellophane bag with three grams of marijuana were pulled from his pants pocket. It is the constitutionality of that seizure that is at issue.

Although the issue of consent to the search, which would, of course, eliminate any constitutional concern, was raised by the State, the lower court appears to have been less than satisfied with the supporting evidence. Even though we must support the decision below on any established legal ground, *State* v. *Auger*, 124 Vt. 50, 54, 196 A.2d 562, 565 (1963), having in mind the equivocal evidence and uncertain finding, we cannot support the ruling on that basis, and pass immediately to the justifying issue upon which the trial court rested its position.

The State seeks to sustain the seizure of the pipe and drug materials on the authority of *Terry* v. *Ohio*, 392 U.S. 1 (1968), which permits, under certain circumscribed circumstances, a police officer to conduct a "pat down" search for weapons for the protection of the officer. The defendant argues that the search in this case was outside the permissive limits of *Terry*, having in mind the defining of those limits in *Sibron* v. *New York*, 392 U.S. 40 (1968), decided the same day.

In *Terry*, Chief Justice Warren stated the test in the following language:

> Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. (Citations omitted.)

392 U.S. at 27.

In *Sibron*, by contrast, Chief Justice Warren pointed out:

The police officer is not entitled to seize and search every

person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. *Terry* v. *Ohio, supra*. Patrolman Martin's testimony reveals no such facts. The suspect's mere act of talking with a number of known narcotics addicts over an eight-hour period no more gives rise to reasonable fear of life or limb on the part of the police officer than it justifies an arrest for committing a crime. Nor did Patrolman Martin urge that when Sibron put his hand in his pocket, he feared that he was going for a weapon and acted in self-defense. His opening statement to Sibron—"You know what I am after"—made it abundantly clear that he sought narcotics, and his testimony at the hearing left no doubt that he thought there were narcotics in Sibron's pocket.

392 U.S. at 64.

The application of the standards of these cases, particularly with their reasonableness component, requires a case by case examination of the factual background. It is to this end that the suppression hearing before the trial court is directed. The issue then becomes, in this Court, one of determining whether or not the facts found by the lower court have sufficient support in the evidence and justify the ruling made below.

The evidence discloses that when the defendant knocked on the door, the police officer who opened it to admit him recognized him from previous encounters. The officer knew that he had been involved in previous assaultive behavior. The trial court pointed out in its findings that it was the defendant's unrebutted testimony that all of the assaults involved police officers, and one incident involved confronting a police officer with a knife. It is also unchallenged that the search was, in fact, a "pat down" search such as is conducted for weapons. In fact, the rather equivocal consent evidence reveals that it was when the officer discovered a hard object and then attempted to invade the defendant's pocket to remove it, that the defendant protested. The officer testified that he thought it might be

a weapon such as a knife. The trial court also set out as proper considerations the lateness of the hour, the location in a high crime area and the presence of drug trafficking at the place being searched under the warrant.

These are ample to support the ruling below. This case is much stronger on its facts than the *Terry* case, since that officer's action, while outreaching mere "hunch," relied on inferences based on generalized experience, not on knowledge about the defendants involved. He reasoned from observation of actions not necessarily questionable that the individuals were contemplating robbery, that robbery imports violence or arms and that therefore they might be armed. Here exists the added facts that the defendant was known to the officer and also known to be assaultive.

*Sibron* does nothing to aid the defendant since it stands for the proposition that the court in that case found that the officer's own testimony belied his intrusion on Sibron's person as anything other than an unsupported search for narcotics, with no concern on the part of the officer about safety or dangerousness. It must be remembered that *Sibron* does not hold that narcotics may not involve danger to an officer, but merely that that element was not involved in that case.

*Ybarra* v. *Illinois*, 444 U.S. 85 (1979), is equally inapplicable here. It stands for the proposition that a warrant to search a particular place, in that instance a public tavern, does not generate justification for a routine search or frisk. It rests on the absence of the reasonable belief the trial court supportively found present here.

*Judgment affirmed.*

**Underwood, J.,** dissenting. I would reverse and vacate the judgment of conviction. I cannot in good conscience join with the majority in extending the holding of *Terry* v. *Ohio*, 392 U.S. 1 (1968), to the facts in this case to permit a warrantless search of the defendant's person under the guise of protection of a police officer. The evidence clearly indicates that the search of the defendant was not undertaken with the limited protected search for weapons permitted by *Terry*, but rather as a ploy for searching the defendant for drugs.

The police had a warrant to search for drugs in a certain

lady's apartment in Winooski. At 1:30 a.m. while their search was underway at her apartment, came a knock at the front door. One of the policemen opened the door and observed the defendant standing there. He had been drinking, and beside the partially consumed bottle of beer in his hand he had a suitcase and a duffle bag. He had been invited by one tenant of the apartment to spend the night.

Instead of then and there turning the defendant away with the explanation that a police investigation or search was in progress inside, the police officer invited him into the apartment and then requested that he submit to a pat down search for hard weapons.

*Terry* involved a stop-and-frisk in a "street encounter" type of situation where self-protective action was justified only because the police officer had to place himself into a potentially dangerous situation by carrying out his duty to investigate suspicious conduct. In the instant situation the danger, if any, was created when the police officer invited the defendant to come inside where the police officers were carrying out their duty in executing a search warrant for drugs located in the apartment.

Had the police officer turned the defendant away at the door no officers' security problem of any kind would have presented itself. *United States* v. *Miller,* 546 F.2d 251 (8th Cir. 1976). There is nothing in the evidence or in the trial court's findings indicating that the police officer, upon first seeing the defendant at the door or when he invited the defendant into the apartment, had any reason to believe that the person with whom he was dealing may be armed and presently dangerous.

*Terry,* it must be remembered, recognizes that it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties, and that the reasonableness of police conduct must be judged by "balancing the need to search [without a warrant] against the invasion which the search entails." *Id.* at 21 (quoting *Camera* v. *Municipal Court,* 387 U.S. 523, 536–37 (1967)).

## I.

The Fourth Amendment to the United States Constitution declares:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"No right is held more sacred, or is more carefully guarded . . . than the right of every individual to the possession and control of his own person . . . ." *Terry* v. *Ohio, supra,* 392 U.S. at 9 (quoting *Union Pacific Ry.* v. *Botsford,* 141 U.S. 250, 251 (1891)).

A warrant to search a place does not also sanction the search of all persons who happen to be in that place. *Ybarra* v. *Illinois,* 444 U.S. 85, 91–92 (1979). "The fourth amendment does not authorize the detention and search of all persons who may be present, or all persons who may enter a premises during the time of the warrant's execution." *United States* v. *Clay,* 640 F.2d 157, 161 (8th Cir. 1981) (citations omitted).

The warrant in the present case covered only a search of the premises and did not extend authority to search the person of the defendant. The United States Supreme Court has declared that warrantless searches, "conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz* v. *United States,* 389 U.S. 347, 357 (1967). See also *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 219 (1973). One such exception was carved out in *Terry* v. *Ohio, supra,* 392 U.S. at 27, where the court held:

> [T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer

acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. (Citations omitted.)

In a companion case decided the same day, the Supreme Court underscored the limited nature of the *Terry* exception and limited the kind of facts which would justify a search for weapons.

Before he places a hand on the person of a citizen in search of anything, [the police officer] must have constitutionally adequate, reasonable grounds for doing so. In the case of a self-protective search for weapons, he must be able to point to *particular* facts from which he reasonably inferred that the individual was armed and dangerous.

*Sibron* v. *New York,* 392 U.S. 40, 64 (1968) (emphasis added). A search motivated by a desire to discover evidence of crime rather than weapons is not authorized unless there is an adequate basis for arrest.

In the present case, however, the police officer specifically disavowed relying on any particularized facts, but testified that the search was part of his routine:

A. The pat-down search was done in an effort to protect the searching officers in case the subject did possess any hard weapons.

. . . .

Q. Why did you think that [the defendant] would have any weapons on him?

A. It's not uncommon for people to carry weapons nowadays.

Q. [I]n other words, you didn't believe [the defendant] more likely than others, anyone else, would have weapons, is that correct?

A. Right. I couldn't see any bulges in his clothing or anything else of that nature.

Q. So is this routine, that you normally pat-down people when you talk with them?

A. When we are involved in something of this nature, yes I would do something like that.

Q. What is it about the nature of what you were doing that would cause you to think that there would be a likelihood of weapons?

A. Well, due to the fact there was a certain amount of trafficking being done within the apartment that we knew of from an informant. It is not uncommon that people may possess weapons in certain situations such as that.

There are some cases which uphold the constitutionality of a search motivated by this rationale. For example, the Supreme Court of Colorado in *People* v. *Nefzger,* 173 Colo. 199, 476 P.2d 995, 996 (1970), stated:

> It is certainly reasonable for a police officer conducting a legal search of premises which he believes to be involved in the sale of narcotics to frisk occupants and those coming to the house for weapons in order to protect himself against the use of such weapons.

Later Colorado cases have backed away from grounding justification to search merely on proximity of the suspect to the premises being searched pursuant to a valid warrant, and now cite *Nefzger* for the proposition that a defendant reaching for his pocket may justify a *Terry*-type search for the protection of the officer. See *People* v. *Casias,* 193 Colo. 66, 563 P.2d 926, 934 (1977).

In another instance the New York Supreme Court stated:

> It is generally known by the police and others that those who traffic in large quantities of narcotics are often armed. . . . The mere presence of a person or persons in such an environment, presents that reasonable suspicion and belief, which gives rise to sufficient and legal justification to frisk all present for weapons, at the very least.

*People* v. *Finn,* 73 Misc. 2d 266, 274, 340 N.Y.S.2d 807, 816 (Crim. Ct. 1973). This decision was apparently an aberration. Research discloses no other application in New York of the principle enunciated or even any further mention of the case. Indeed, other New York cases, both before and after *Finn,*

make it clear that a particularized suspicion directed at the person to be searched is required. See, e.g., *People v. Arthurs,* 24 N.Y.2d 688, 249 N.E.2d 462, 301 N.Y.S.2d 614 (1969); *People v. Mack,* 26 N.Y.2d 311, 258 N.E.2d 703, 310 N.Y.S.2d 292 (1970); *People v. Sanchez,* 38 N.Y.2d 72, 340 N.E.2d 718, 378 N.Y.S.2d 346 (1975).

In any event, the view enunciated in *Nefzger* and *Finn* is incompatible with the standard enunciated in *Terry,* as more recent pronouncements from the Supreme Court and federal circuit courts of appeal have made clear.

*Terry* requires that the police officer be able to point "not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry, supra,* 392 U.S. at 27. *Sibron* made clear that "[t]he inference that persons who talk to narcotics addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security." *Sibron v. New York, supra,* 392 U.S. at 62. Rather, an officer "must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous," *id.* at 64, and then act because of those facts. *Id.* at 64–65; see also *People v. Sanchez, supra.*

And in *Ybarra v. Illinois, supra,* 444 U.S. at 93–94, the Supreme Court expressly rejected the notion that *Terry* permits the routine search of all persons present during the execution of a warrant to search a particular place.

> Nothing in *Terry* can be understood to allow a generalized "cursory search for weapons" or, indeed, any search whatever for anything but weapons. The "narrow scope" of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place.

See also *United States v. Clay, supra,* 640 F.2d 157 (frisk for weapons improper when directed at one who entered private residence during warrant search for drugs, firearms, and contraband, absent specific, articulable facts indicating that he

was then armed and then dangerous); *United States* v. *Miller*, 546 F.2d 251 (8th Cir. 1976). Compare *United States* v. *Peep*, 490 F.2d 903 (8th Cir. 1974) (frisk for weapons justified when directed at one who showed up at private residence being searched pursuant to warrant where police knew (1) narcotics distribution equipment present; (2) three persons had already come in with substantial quantities of narcotics; (3) prior search of apartment of one of the residents turned up hand grenade and .45 caliber pistol; (4) the other resident had been heard to brag about having shot a police officer; and (5) suspect's pants pocket had large bulge). See also *United States* v. *Mack*, 421 F. Supp. 561 (W.D. Pa. 1976) (frisk justified where (1) the person searched was occupant of the place searched; (2) warrant was issued to search for evidence of *his* dealings in heroin; (3) he had been seen by reliable informant cutting and packaging heroin; (4) he had prior record of felony offenses for narcotics and burglary; (5) recent experience of this police department was that high percentage of persons arrested for narcotics violations were armed).

I conclude that the search here was not within the narrow confines of the *Terry* exception to the general prohibition of warrantless searches, and would hold that the evidence seized as a result should have been excluded unless other adequate grounds existed to justify the search, such as the defendant's consent to be searched.

## II.

The court below upheld the search as within the confines of *Terry*, and so did not come to any conclusions of law as to whether the defendant expressly or impliedly consented to the search. The court's finding of fact was somewhat equivocal on the subject.

> Officer Lawrence . . . requested defendant to submit to a "pat down" search for hard weapons. It has been suggested that defendant may have consented to the search. The Court must conclude from the evidence that the proof of consent is less than clear. What the Court does believe is that defendant first said "go ahead" but when Lawrence felt a hard object in defendant's right front pocket, defendant attempted to object to prevent entry

into the pocket with his elbow and complained that entry was "illegal." Lawrence described the object as feeling like a pocket knife or similar instrument with the blade protruding. Lawrence reached in and pulled out the object which turned out to be a pipe. Along with the pipe he pulled out a plastic "baggie" containing a small amount of marijuana. That marijuana is the contraband which is the subject of this charge.

As the defendant notes, the record is devoid of support for the court's finding. The defendant testified that as soon as he entered the apartment, a police officer began rifling his pockets and that when he protested and attempted to avoid the search he was threatened with arrest. The officer's version, though different, also indicates that consent played no role in the encounter:

> I indicated to him that I would have to perform a patdown on his person in an effort to determine if he was possessing any hard weapons.
>
> . . . .
>
> The defendant did not resist. He submitted. And I believe if I'm correct in assuming this, if I can remember correctly, *he raised his arms as if to gesture "go ahead."* And then the pat-down search was conducted by myself. (Emphasis added.)

It seems clear that the court, in its findings, misremembered the officer's account of the defendant's submission—"he raised his arms as if to gesture 'go ahead' "—and transferred the words "go ahead" to the defendant's mouth. In any event, what the court "believed" is without support in the record. Moreover, the court's statement that the "proof of consent is less than clear," requires a finding that no consent was given. "[W]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Schneckloth* v. *Bustamonte, supra,* 412 U.S. at 222 (quoting *Bumper* v. *North Carolina,* 391 U.S. 543, 548 (1968)). Where the prosecutor's proof is "less than clear" this burden has not been met.