■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRED T. BLAKE, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered March 15, 1974, convicting him of attempted criminal possession of a dangerous weapon, upon his plea of guilty, and imposing sentence. The appeal also brings up for review an order of the same court, entered March 21, 1974, which, after a hearing, denied his motion to suppress the weapon. Judgment and order reversed, on the law and the facts, motion granted, and indictment dismissed. The testimony at the suppression hearing reveals that two police officers, while on regular patrol duty during the early morning of June 27, 1972, were flagged down by a passing "gypsy cab" driver, who informed them that a man standing on the corner of Amboy Street and Dumont Avenue was in possession of a gun. The driver then sped away; the officers failed to record either his name or the vehicle's license plate number. The officers then proceeded, along with two other officers who happened to be nearby, to the designated street corner and observed the defendant and another man standing there. Upon the approach of two of the officers, the two men turned around and casually walked in the direction of a nearby open poolroom, whereupon they were ordered, at gunpoint, to halt. Both men were then "frisked"; a gun was found in the defendant's waistband. The legality of the seizure of the defendant and of the ensuing "frisk" "depends on the presence of probable cause or whether it fits within the narrow exception carved out by the Supreme Court in *Terry v. Ohio* (392 U. S. 1) and *Adams v Williams* (407 U. S. 143) where forcible street encounters were found to have been properly initiated by the police and reasonable under the circumstances" *(People v Cantor,* 36 NY2d 106, 110). We find that probable cause was lacking and that the seizure was not reasonable under the circumstances. The forcible street encounter was predicated solely upon the cab driver's allegation that a certain undescribed man, standing at a designated location, possessed a gun. The record discloses that the officers did not observe a bulge or other indication of a weapon prior to their "frisk" of the two men. The men's conduct in turning around and casually walking in the direction of the open poolroom, *prior to* their being ordered to halt, was in no way suspicious. Hence, we are drawn to the inescapable conclusion that *any* male (or males,

as was the case here), who, by happenstance, might have been standing on that particular street corner at that moment, would have been subjected to a gunpoint seizure and "frisk". We heed the cautionary language of our Court of Appeals in *People v Green* (35 NY2d 193, 196): "A citizen walking our streets should not, *without more,* be exposed to physical assault by a police officer on the basis of an unsubstantiated report of the mere possession of firearms volunteered by a stranger. To condone such conduct would be to expose innocent persons to harassment by pranksters and irresponsible meddlers" (emphasis supplied). Martuscello, Acting P. J., Cohalan, Rabin, Shapiro and Titone, JJ., concur.