■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HAROLD BENJAMIN, Also Known as HAROLD MILEY, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered June 22, 1978, convicting him of criminal possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial of a motion to suppress certain evidence. Judgment reversed, on the law, motion granted, indictment dismissed and the case is remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. The sole testimony at the suppression hearing was that of Police Officer William Loran. Officer Loran testified that on October 27, 1977, at about 9:00 P.M. he received a radio run which took him to the vicinity of 107th Avenue and New York Boulevard in Queens. The radio run informed him that there were men with guns at that location. When he arrived at the location he got out of the car and started to proceed down the sidewalk. There were approximately 30 people in the vicinity. In response to a question as to what, if anything, he observed that was out of the ordinary, Loran stated: "A. As we were approaching the corner I observed the defendant place his hands—reach behind him and start stepping back toward the curb, placed me in fear that possibly he had a gun secreted on his person * * * A. I asked him to put his hands back out where we could see them, proceeded to pat him down, felt an object in the rear waistband of his pants, removed the object, and it was a loaded .22 caliber revolver." On cross-examination Officer Loran could not recall whether the radio run gave any description as to the men at the subject location. When he arrived there with a fellow officer he observed men in various positions. They were not in one large group but were spread along the street. Defendant was in the vicinity of two other people. Officer Loran could not recall whether he searched anyone else prior to patting defendant down. At the time he first saw him, Loran believed defendant was facing in his direction. Loran had exited an unmarked car and was in plainclothes. He was about 10 feet from defendant at the time he first saw him. Loran believed defendant was wearing a jacket which was over the weapon found on the latter in his waistband. On this record, we hold that the People failed to sustain their burden at the suppression hearing (see *People v Lypka,* 36 NY2d 210, 214; see, also, *People v Green,* 33 NY2d 496, 500, n 3). In *People v Wynn* (54 AD2d 366), this court held that where the primary impetus for a "stop-and-frisk" is a police radio transmission, a two-step analysis should be undertaken. Inquiry should first be had as to the quality of information possessed by the "sender"—i.e., that information which is possessed by the police department. If that information were sufficient, had it been given first-hand to the officer acting in reliance on the radio message, to justify the stop and frisk undertaken, no further inquiry is necessary and the People will have been deemed to have met their burden *(People v Wynn,*

*supra*, p 368). However, if such information were insufficient the People must then establish that the actions of the officer who received the message were justified by the officer's independent observations—either confirming the information received over the radio or noting suspicious conduct or potential danger *(People v Wynn, supra,* pp 369-370). At bar, there is no evidence that the sender of the radio call had sufficient information to justify a stop and frisk. There was no evidence presented concerning the identity of the person who notified the police about the "men with guns". Thus, insofar as the record is concerned, the informant was anonymous. Tips of this nature are of the weakest sort *(People v De Bour,* 40 NY2d 210, 224). Furthermore, there was no evidence that *any* description of the men was furnished to the responding officers. That being the case, it cannot be said that Officer Loran's independent observations were corroborative of the information received via the transmission (cf. *People v Kinlock,* 55 AD2d 627, affd 43 NY2d 832; *People v Stroller,* 42 NY2d 1052). Nor was there anything suspicious about the defendant's conduct in reaching behind his back (see *People v Johnson,* 56 AD2d 766; cf. *People v De Jesus,* 55 AD2d 196), or in stepping back toward the curb (see *People v Blake,* 51 AD2d 748; see, also, *People v Lewis,* 49 AD2d 558), in light of the fact that Officer Loran had exited from an unmarked car and was dressed in plainclothes. Although Officer Loran testified that defendant's motions "placed [him] in fear that possibly he had a gun secreted on his person", the test to be applied is an *objective* one (see *People v Cantor,* 36 NY2d 106, 113; see, also, *People v Johnson, supra;* CPL 140.50). A limited search for weapons is authorized where a police officer *"reasonably* suspects that he is in danger of physical injury" (CPL 140.50, subd 3; emphasis supplied), but "Reasonable suspicion is the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand" *(People v Cantor, supra,* pp 112-113). The circumstances related by Officer Loran are devoid of any objective indicia of danger. Accordingly, the motion to suppress physical evidence should have been granted and the indictment dismissed. Shapiro, Margett and Martuscello, JJ., concur.

Titone, J. P., dissents and votes to affirm the judgment, with the following memorandum, in which Mangano, J., concurs: In my opinion the totality of events leading to the frisk of the defendant fully justified the actions taken by Police Officer Loran. It is clear from the facts adduced that Loran, after proceeding to the subject intersection, did not, blunderbuss fashion, indiscriminately stop and frisk a number of the approximately 30 persons spread along the street. Instead, alerted by the report via police radio that there were men possessing guns there, his attention was understandably drawn to the actions of defendant's stepping back toward the curb and suddenly and simultaneously reaching *both hands* behind his back, under his jacket, in the vicinity of his waistband. Such actions by defendant at the time and under the circumstances fully justified Loran's fear that he was in imminent danger of physical injury, and that therefore an immediate frisk was essential (see *People v De Jesus,* 55 AD2d 196; CPL 140.50, subds 1, 3). The majority's assertion that there was nothing suspicious about defendant's conduct in reaching behind his back, *or* in stepping back toward the curb, in light of the fact that Officer Loran had exited from an unmarked car and was dressed in plainclothes, is without merit. First of all it was *both* (not either) the stepping back *and* the reaching with both hands by defendant which, Loran said, alerted him to the possible existence of danger. Secondly, the majority's position totally ignores the very real possibility that defen-

dant, alarmed by the sudden appearance of two strangers in the area alighting from their vehicle, and fearful that policemen not in uniform had arrived, immediately reacted by instinctively reaching for his weapon. I do not believe that it is unreasonable for those engaged in law enforcement work to assume that some persons engaged in criminal activity have a proclivity for recognizing undercover or other surreptitious police actions. In evaluating the total situation confronting an officer in a given instance and determining whether his fear for his personal safety was a reasonable basis for an ensuing stop and frisk, the trial court should consider the officer's training and experience as a police officer, and his expertise in the area of detecting suspicious circumstances which, to an ordinary individual, might appear innocent (cf. *People v Beasley,* 250 Cal App 2d 71). In this instance, the record reveals that Loran had been a member of the New York City Police Department for approximately 10 years and at the time in question was working as a plainclothes officer. The proper analysis in a case of this nature is to examine the predicate for the police action and then determine whether or not that predicate justified the extent of the official intrusion of the individual *(People v Stewart,* 41 NY2d 65). While a police radio report does not lend itself to an evaluation of its accuracy, the police would be remiss if they failed to investigate a report concerning a gun. In this situation, when Loran arrived at the subject location as a result of a radio report that persons with guns were there, he observed defendant make a sudden motion with both hands toward a part of his body where such a weapon is normally carried. Under such circumstances the police officer was, in my opinion, justified in believing that defendant was one of the persons carrying a gun, as reported, and that he was in danger. Thus, he could then make a limited search in order to allow him to pursue the investigation without fear of violence. It should also be noted that since the encounter occurred at approximately 9:00 P.M. in the month of October, darkness prevented the officer from making the observation of a weapon outline, thereby justifying the ensuing frisk under the circumstances (see *People v McLaurin,* 43 NY2d 902, revg 56 AD2d 80 on the dissenting opn of Mr. Justice Nunez; see, also, *People v Kinlock,* 55 AD2d 627, affd 43 NY2d 833).