The defendant was indicted and convicted for the felonious possession of marijuana. Alabama Code (1975), Section 20-2-70. Sentence was three years' imprisonment. The major issue on appeal is whether the affidavit is sufficient to support a finding of probable cause to search.
 I
The substance of the affidavit is as follows:
 "Before me, the honorable Newman C. Sankey, Judge of the District Court of Montgomery County, Montgomery, Alabama, the undersigned being first duly sworn deposes and says:
 "That they are Police Officers in and for the City of Montgomery, Alabama, and that they have reason to believe, probable cause to believe, and in fact do believe that Cocaine, a controlled substance, or any compound mixture or substance containing Cocaine is being kept, stored, and concealed in the residence of Suzette Allen located at 2409 East Sixth Street in Oak Park, Montgomery, Alabama. This is in violation of the Alabama Uniform Controlled Substance Act of 1971.
 "And the facts tending to establish the foregoing grounds for issuance of a day time search warrant are as follows:
 "On or about March 31, 1978, Affiants C.M. Armstrong and J.A. Dorrill met in person with a confidential and reliable source hereinafter referred to as `A'. `A' stated to the affiants in person that he had personally observed a quantity of Cocaine within the residence of Suzette Allen located at 2409 East Sixth Street in Oak Park, Montgomery, Alabama, within the past two days. Upon checking the February, 1978 edition of the Montgomery Telephone Directory, Affiant Armstrong found a Suzette Allen listed with the address 2409 East Sixth Street and telephone number 265-3736. Upon checking with Alabama Power Company, Affiant Armstrong found that the power for the residence of 2409 East Sixth *Page 99 
Street in Oak Park in Montgomery, Alabama is listed in the name of Suzette Allen.
 "Further probable cause being that within the past two weeks, the affiants C.M. Armstrong and J.A. Dorrill have personally observed on more than one occasion numerous persons going and coming from the residence of Suzette Allen located at 2409 East Sixth Street Oak Park, Montgomery, Alabama. Those people would only stay for short time and then leave that residence.
 "Further probable cause being that on March 15, 1978, affiant C.M. Armstrong went to the residence of Suzette Allen located at 2409 East Sixth Street Oak Park, Montgomery, Alabama, in an attempt to make an undercover buy of one gram of Cocaine from Suzette Allen. Upon arriving, affiant Armstrong talked with a white female who identified herself as Suzette Allen. The white female who identified herself as Suzette Allen agreed to sell affiant Armstrong one gram of Cocaine for ninety (90) dollars. This sale was set to be made one hour after affiant Armstrong's first contact with the white female. During that one hour period, Suzette Allen learned that Armstrong was a police officer and did not sell to him.
 "Further probable cause being that there are numerous reports on file in the office of the Narcotics and Dangerous Drugs Detail of the Montgomery Police Department regarding the drug activities of Suzette Allen.
 "Source `A' has proven reliable in the past in that on or about December 10, 1977, affiant Armstrong received information from `A' in person that resulted in the arrest of Bobby Lee Reynolds for sale of amphetamine and possession of amphetamine and Connie Marie Blackwell for Felony Possession of Marihuana and Possession of amphetamine. Both Reynolds and Blackwell have been indicted by the Montgomery County Grand Jury and are currently awaiting trial in Montgomery County Circuit Court.
 "Source `A' has further proven reliable in that `A' has given affiants Armstrong and Dorrill information on other drug activity that is currently under investigation with arrest pending.
 "This affidavit is based upon facts and personal observations of the affiants C.M. Armstrong and J.A. Dorrill and is made for the purpose of securing a day time search warrant for the residence of Suzette Allen located at 2409 East Sixth Street, Oak Park in Montgomery, Alabama.
"Sworn to before me this the 1st day of April, 1978."
This affidavit is sufficient to support a finding of probable cause to search the described residence despite the defendant's several grounds of objection. The affidavit satisfies both the basis of knowledge test and the veracity test of Aguilar v.Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
The affidavit contains an express statement of time of the occurrence of the facts relied upon, i.e., within the past two days from March 31, 1978. A statement by the affiant that his informant observed the alleged offense "within" a certain period of time is sufficiently clear and definite. 100 A.L.R.2d 525, Section 5 (c) (1965). The affidavit need not state the exact time the informant observed the events relied upon to show probable cause.
The informant observed cocaine in the house "within the past two days" from March 31, 1978. The search warrant was obtained and executed on April 1, 1978. The information contained in the affidavit is not too remote.
 "The requirement that an affidavit for a search warrant state the time of the occurrence of the facts relied upon is based on the necessity that there exist at the time the warrant is issued probable cause for believing that the facts relied upon still continue to exist. Simultaneity is, of course, normally impossible, but just how long a time may be permitted to elapse without destroying the basis for a reasonable belief as to the continuance of the *Page 100 
situation set forth in the affidavit will vary according to the facts of the individual case. About all that may be stated by way of a general rule is that the courts will require that no more than a `reasonable' time have elapsed, the nearer the time at which the facts occurred is to the time when the affidavit was made, the more probable it being that the affidavit will be held to justify a conclusion of probable cause."
100 A.L.R.2d 525, Section 6.
The informant need not state the quantity of controlled substance he observed. "(A)n assertion by an informant that he saw illegal drugs or the like at a certain place is regularly accepted without any showing as to how the informant was able to identify the substance." W. LaFave, 1 Search and Seizure 539 (1978).
The affidavit contains a sufficient statement of facts from which either the inherent credibility of the informant or the reliability of his information on this particular occasion could be determined. Aguilar. While a bare statement by an affiant that he believed the informant to be truthful would not, in itself, provide a factual basis for crediting the report of an unnamed informant, Aguilar, Spinelli v. UnitedStates, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the affidavit in the present case contains an ample factual basis for believing the informant.
A declaration that the informant's past information has led to convictions is a sufficient showing of the informant's credibility, McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056,18 L.Ed.2d 62 (1967).
 "It should not be concluded, however, that for an informant to have an acceptable `track record' it must appear that his prior information has resulted in one or more convictions, for this clearly is not the case. As explained in People v. Arnold, 186 Colo. 372, 527 P.2d 806 (1974):
 "`To impose the more stringent requirement that the information led to convictions would impose an undue restriction on law enforcement officers. The information previously furnished may be in connection with cases not yet tried or may relate to prosecutions dismissed for reasons unrelated to the reliability of the informant's information. Of course, the fact that the information previously supplied has resulted in convictions would strengthen the reliability factor of the informant.'" LaFave, Vol. 1 at 510.
In Keller v. State, 54 Ala. App. 127, 305 So.2d 402 (1974), this Court held that an assertion in the affidavit that the informant's prior information led to three arrests stated sufficient facts upon which to base the credibility of the informant. While the better view is that a bald assertion that the informant's past information prompted the police to make one or more arrests will not suffice to establish the informant's credibility (because it does not indicate the information was thereby shown to be correct), a determination of credibility can properly be made where it is revealed not simply that arrests were made, but rather that the prior information led to "arrests and prosecutions" or to arrests followed by "a finding of probable cause". LaFave, Vol. 1 at 514-515. Also an informant need not be shown to have been reliable any particular number of times. Bates v. State,51 Ala. App. 338, 285 So.2d 501, cert. denied, 291 Ala. 773,285 So.2d 506 (1973), cert. denied, 416 U.S. 939, 94 S.Ct. 1940,40 L.Ed.2d 289 (1974).
Additionally, it must be noted that the partial corroboration supplied by the personal observations of the police officers lends support to both the informant's basis of knowledge and his veracity. Here the independent corroboration was incriminating (the proposed sale of drugs) and also consisted of circumstances which were unusual and inviting explanation (the frequent traffic to and from the described residence). The police observed activity which reasonably suggested efforts directed to the carrying out of criminal activity. Generally see LaFave, Vol. 1 at 558.
Our independent review of the affidavit convinces us that the district judge properly made a finding of probable cause and issued the search warrant. *Page 101 
 II
It is a settled principle that a warrant to search designated premises will not authorize the search of every individual who happens to be on the premises. Smith v. State, 292 Ala. 120,289 So.2d 816 (1974). Here the officers had probable cause to believe that evidence which might be concealed or destroyed was to be found upon the defendant. They acted within the lawful limits of their authority in searching his person.
The search was conducted at 5:51 in the morning. The first police officer to the front door, Officer Joe Dorrill, knocked on the door and stated that he was a police officer and had a search warrant. He did this "approximately three different times". During this time police officers heard a "ruckus going on in the back" of the residence. After several attempts, Officer Dorrill forced open the front door. Under these circumstances this type of entry was proper. Laffitte v. State,370 So.2d 1108 (Ala.Cr.App.), cert. denied, Ex parte Laffitte,370 So.2d 1111 (Ala. 1979).
Because they had difficulty in gaining entrance, Officer C.M. Armstrong ran around to the back door of the house. As he "was going to the back door the defendant, Frank Travis, was trying to come out the back door". The defendant was searched for weapons and inside his shirt pocket were found two small vials, one of which contained hashish. The second vial contained a residue that was inconclusive for cocaine.
The officers had information that Suzette Allen, in whose name the residence was listed, "had been dealing in drugs for sometime". They knew that the defendant was a "frequenter of her residence" although they did not expect the defendant to be present when they executed the search warrant. Officer Dorrill also "had heard of the drug activities of the defendant" although "not in connection with the present search warrant". Although guilt by mere association is not part of our jurisprudence, McDonald v. State, 53 Ala. App. 394, 396,300 So.2d 837, cert. denied, 293 Ala. 766, 300 So.2d 838 (1974), reputation, when combined with other factors, may help to support a finding of probable cause. Hatton v. State,359 So.2d 822, 828 (Ala.Cr.App. 1977), cert. quashed, 359 So.2d 832 (Ala. 1977).
The items sought in the search warrant were of such a nature that they could easily be concealed on the person. The defendant had an opportunity to conceal these items. Under these circumstances, the police had probable cause to search the defendant.
The police also had a right to "frisk" the defendant for weapons in order to protect themselves. However, such a search "is limited in scope to a `pat-down' of the suspect's outer clothing and to seizure of hard objects whose size and shape give the officer probable cause to believe they are weapons".Smith, 292 Ala. at 122, 289 So.2d at 818; Thomas v. State,353 So.2d 54, 57 (Ala.Cr.App.), cert. denied, 353 So.2d 59 (Ala. 1977). The largest "vial" or "tube" found in the defendant's pocket was "Tumsize". Because the officer frisking the defendant for weapons specifically stated that he "didn't conceivably think they were any type of weapons in particular", we do not base our finding of the lawfulness of the search of the defendant upon the theory that it was justified as a search for weapons. Under our present decision such a finding is unnecessary to the merits of the issue. However, we must note that it "is generally known by the police and others that those who traffic in large quantities of narcotics are often armed", and the "mere presence of a person or persons in such an environment presents that reasonable suspicion and belief, which gives rise to sufficient and legal justification to frisk all present for weapons." People v. Finn, 73 Misc.2d 266,340 N.Y.S.2d 807, 816 (1973).
We have searched the record as required by law and found no error prejudicial to the defendant. The evidence is sufficient to support the verdict. The judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur. *Page 102 
 ON REHEARING
We have reviewed the conclusions of this case in light of the recent opinion of the United States Supreme Court in Ybarra v.Illinois, 26 Crim.L.Rep. (B.N.A.) 3017 (November 28, 1979). There a police search of a bar patron, conducted without probable cause to believe that he was violating the law, during the execution of a warrant authorizing the search of the bar and the bartender for narcotics and related items, violated the patron's Fourth Amendment right. Our decision does not conflict and is consistent with Ybarra.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
All the Judges concur.