[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 343 
Attempted arson in the second degree; twenty years.
The appellant was indicted and convicted for attempted second degree arson of the Galilee Baptist Church in violation of §§13A-7-42 and 13A-4-2 (a), Code of Alabama 1975. This offense is a Class C felony under § 13A-4-2 (d)(3), Code of Alabama 1975.
At appellant's sentencing hearing it was determined that appellant had a prior felony conviction for violation of the "National Firearms Act" under federal statute26 U.S.C.A. § 5861 (d). The trial court then sentenced appellant as a recidivist to twenty years' imprisonment pursuant to § 13A-5-9
(a)(1), Code of Alabama, supra.
The State's evidence revealed that Ms. Laura Strickland, a member of the Galilee Baptist Church in the Bessemer Division of Jefferson County, went to the church for a teachers' meeting around 6:00 p.m. on Wednesday, October 22, 1980. Attached to the front door of the church Ms. Strickland saw what appeared to be a bomb. The object in question had been seen earlier around 8:30 a.m. by Ms. Hattie Mae Freeman, but had gone unreported because from her point of observation the bomb looked like a piece of paper. Ms. Freeman stated that she "thought it was for the pastor or some of the members." Ms. Strickland notified church officials who, in turn, notified the Birmingham Police Department.
Sgt. Thomas Greene, the commander of the police bomb squad, successfully deactivated the explosive device. In Sgt. Greene's expert opinion, the bomb "was indeed an explosive device" and had it been detonated at the church "a very high explosion" would have occurred. Greene stated that anyone standing nearby "would have been seriously injured or killed."
According to Sgt. Greene, the bomb had been constructed by wiring a twelve-volt J.C. Penney battery with the name "D. Swann" inscribed on top of it to a blasting cap. It was determined that the battery was a "workable battery." The blasting cap was to have been activated by a Westclox "Baby Ben" alarm clock, that was also wired to the battery, when the hands on the clock reached a particular time. Two screws had been inserted through the plastic shield to the face of the clock to hold the wiring in place and to complete the electrical circuit at the selected time. The alarm clock was wired to the battery with double-strand speaker wire. Yellow and orange insulated wires were also used in constructing the bomb. The blasting cap, once activated, would have set off the three main charges of Kinestix[1] causing an explosion. Sgt. Greene observed that the three canisters of Kinestix had been taped to the front door of the church with surgical tape.
On May 14, 1981, Greene safely disposed of the three canisters of Kinestix at a demolition *Page 344 
site. "[I]t went high order, . . . It means it completely functioned. . . . There was nothing left over after the explosion. It was totally consumed. It did everything it was supposed to do." Greene was also able to safely detonate the blasting cap.
Sgt. Greene further stated that pursuant to a warrant he and other law enforcement officials conducted a search of appellant's residence at 1440-D Hugh Denman Drive in Birmingham. This residence was located approximately 3.8 miles from Galilee Baptist Church. Appellant's wife and a "party by the name of Reezer" were present during the search.
Greene testified that on top of a closet shelf in appellant's master bedroom he found a model race car that had been taken apart and some single-strand yellow wire underneath it. When Greene attempted to put the model car back together he found that two screws were missing. He also found some double-strand wire, like that used to make the bomb, connected to a stereo speaker inside the bedroom.
In addition, Greene discovered a roll of surgical tape, like that wrapped around the three canisters of Kinestix, lying on the floor inside another bedroom. The above items of evidence were turned over to Walter L. Mitchell, Jr. of the Alcohol, Tobacco and Firearms Division of the United States Treasury Department in Atlanta for comparison purposes.
Mitchell's testimony, in essence, was that the wiring, screws and surgical tape found inside appellant's residence were of the same material and had the same characteristics as the material used to make the bomb.
Dietrich Swann testified that his automobile was stolen from Morris Avenue in Birmingham around the first part of October, 1980. Swann verified that his automobile had, in fact, contained the J.C. Penney battery with his name "D. Swann" inscribed on it which was found wired to the bomb.
Kenneth Earl Bryant testified that he and Stanley Stone had stolen Swann's automobile from Morris Avenue on October 4, 1980, and that he had given the J.C. Penney battery to Dwain Reezer a few days later. Bryant identified the battery that was wired to the bomb as the one he had given Reezer. According to Bryant, he had seen the clock that was used to make the bomb in the front room of appellant's residence. At the time he saw the clock it had two holes in the front of it, one at the top and one at the bottom, "like something went in the front of it." Bryant had seen appellant with electrical tools before and had "heard he fixed radios and stuff."
Ward Cleveland, Jr. testified that appellant had taken electronic courses and had also taught electronics at the Birmingham Area Skill Center.
Dwain Keith Reezer, appellant's cousin, confirmed Bryant's testimony concerning the J.C. Penney battery and stated further that he, in turn, had given the battery to appellant about two weeks later. Reezer testified that appellant never returned the battery, even though he had asked appellant for it after hearing about the incident at Galilee Baptist Church. "He asked did I still need the battery and I asked had he got one. He said no. He said if I didn't really need it to let him use it." Appellant told Reezer that "he still had the battery. It was out in the car."
Reezer further testified that he also had been inside appellant's home on occasion and had noticed an alarm clock like the one used to make the bomb on appellant's bedroom dresser.
Starling Thomas testified that about the time the bomb was discovered at the Galilee Baptist Church appellant came to his house "on foot" to "try to get some money to get his brother out of jail." Appellant's brother, Reginald Reese, was arrested on a Tuesday, one day before the bomb was discovered at the church. Thomas stated that when he asked appellant what was wrong with his car, "he told me someone had stole his battery."
Melvin Cox testified that the morning after appellant's brother was arrested, the same day the bomb was discovered, appellant asked him to "jump" his car off with *Page 345 
battery cables. Cox agreed to help, but when he and appellant arrived where appellant's Pontiac automobile was parked the battery was missing. Cox stated that appellant remarked, "`I'll be damned, somebody ripped me off that quick.'" Cox had seen appellant driving the automobile the night before, a few hours after appellant's brother was arrested. Cox's house was located one block from Galilee Baptist Church.
Mrs. Gwendolyn Cook testified that appellant's brother, Reginald, was arrested by the Brownsville Police Department on the Tuesday evening before the bomb was discovered at the Galilee Baptist Church. Ms. Cook's husband was the Police Commissioner for the City of Brownsville and they were members of Galilee Baptist Church. Their house was located approximately one-half mile from the church, within "walking distance." Ms. Cook saw appellant engaged in conversation with her husband around 7:30 a.m. the day the bomb was found.
Willie Walker testified that he was employed with McBrier Construction Company in Jefferson County during the months of August, September and October of 1980. Walker stated that during the course of his employment with McBrier's he had access to blasting caps and the necessary chemical compounds to make Kinestix. "Everybody on the job had access to them." According to Walker, around the last of September or first of October in 1980, he asked the appellant "did he want some, I had some you know." Walker gave appellant a total of eight "shots" of Kinestix. "I told him I would trust him with it, you know, than anybody else. And I had it on hand. So, I gave it to him. He accepted it." Walker further testified that the canisters of Kinestix that had been taped to the front door of Galilee Baptist Church were either the same or similar to the items he had given appellant.
Sgt. Greene was recalled as a State witness and testified that on April 24, 1981, he went to the residence of Robert Reese, appellant's father. Inside a utility house located to the rear of the home Greene found five sticks of Kinestix, seven Dupont blasting caps and some orange and yellow wire. The father's residence was fourtenths of a mile from the Galilee Baptist Church.
Following Greene's testimony on recall, the State rested its case and appellant's motion to exclude was overruled.
Although no eyewitnesses placed appellant at the church with the bomb, from the foregoing facts, the circumstantial evidence connecting appellant to the crime is great. The physical evidence linking appellant to the crime, standing alone, is more than sufficient to support the jury's verdict. The applicable legal principles defining the standard of review in circumstantial evidence cases such as this have been set out inStoner v. State, 418 So.2d 171 (Ala.Cr.App.), cert. denied,418 So.2d 184 (Ala. 1982), and Chambliss v. State, 373 So.2d 1185
(Ala.Cr.App.), cert. denied, 373 So.2d 1211 (Ala. 1979). See also Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert.denied, 368 So.2d 877 (Ala. 1979).
Every element necessary to prove a prima facie case of attempted arson in the second degree under §§ 13A-7-42 and13A-4-2 (a), Code of Alabama 1975, was clearly established. The State proved beyond any reasonable doubt that appellant performed certain overt acts in constructing the bomb and placing it on the front door of the church intending to damage the church building by causing an explosion. Had the bomb exploded, the consequences would have been extensive damage to the church and perhaps death to anyone standing nearby. Appellant failed to complete his intended act only because of a slight miscalculation of depth in inserting one of the screws on the face of the clock to complete the electrical circuit.
 I
Appellant alleges that the indictment is defective because it fails to state every element of attempted arson in the second degree and, therefore fails to charge a violation of the laws of the State of Alabama. *Page 346 
More specifically, appellant argues that in order to properly charge an accused with an attempt to commit a felony it is necessary for the indictment to fully describe the overt act that was performed towards the commission of the offense. Appellant complains that by merely using the words "attempt" and "attempting" in addition to describing the substantive offense of arson in the second degree, the indictment is too indefinite and uncertain to apprise him of the offense he was accused of committing.
The indictment in this case, omitting the formal parts, charged:
 "The Grand Jury of said County, charges that before finding of this indictment Michael Beryl Reese whose name to the Grand Jury is otherwise unknown, did with the intent to commit the crime of Arson, Second Degree in violation of 13A-7-42 of the Code of Alabama 1975, against Galilee Baptist Church, Inc., a Corporation, did on to-wit: October 22, 1980, attempt to commit said crime by attempting to start or maintain a fire or attempting to cause an explosion, in violation of 13A-7-42 of the Code of Alabama 1975, against the peace and dignity of the State of Alabama."
Under § 13A-7-42, Code, supra, "A person commits the crime of arson in the second degree if he intentionally damages a building by starting or maintaining a fire or causing an explosion." Under § 13A-4-2 (a), Code, supra, "A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense."
On numerous occasions this court has held that, if there is no indictment form for an offense set out in § 15-8-150, Code of Alabama 1975, then an indictment which closely parallels the language of the statute creating the offense is generally valid; Matthews v. State, 401 So.2d 241 (Ala.Cr.App.), cert.denied, 401 So.2d 248 (Ala. 1981); Harrison v. State,384 So.2d 641 (Ala.Cr.App. 1980). It is sufficient in an indictment to charge the elements of a statutory offense in the words of the statute. Gayden v. State, 262 Ala. 468, 80 So.2d 501 (1955);Wilder v. State, 401 So.2d 151 (Ala.Cr.App.), cert. denied,401 So.2d 167 (Ala. 1981). The only qualification to this rule is that the indictment must apprise the accused with reasonable certainty of the nature of the accusation against him, so that he may prepare his defense and then plead the judgment of conviction as a bar to any subsequent prosecution for the same offense. United States v. Simmons, 96 U.S. 360, 24 L.Ed. 819
(1877); Wilder, supra.
A comparison of the language used in the indictment and in §13A-7-42 (a), defining arson in the second degree, shows that the language in the indictment closely parallels the statutory language. Every element necessary to establish the substantive offense of arson in the second degree is set out in the indictment by following substantially the same language found in § 13A-7-42 (a).
Therefore, the indictment was not demurrable because it charged an attempt to commit the offense denounced by §13A-7-42 (a). Alabama cases amply sustain the position that an indictment or complaint can be so framed as to charge anattempt to commit a felony. Bradford v. State, 146 Ala. 150,41 So. 471 (1906); Cooper v. State, 33 Ala. App. 407, 34 So.2d 188
(1948); Foster v. State, 32 Ala. App. 605, 28 So.2d 804 (1947).
As Justice Anderson stated in Bradford[2]:
 "It is true said section 4710 relates to an escape, and the indictment in this case avers only an attempt to escape. But section 5306 permits a conviction for an attempt to commit the offense charged, and we see no reason why the State *Page 347 cannot indict for an attempt in lieu of the offense."
[Emphasis added] 41 So. at 473.
In Foster, supra, the accused was indicted for attempting "to break into and enter an inhabited dwelling house." Judge Carr, following Bradford, wrote:
 "We can see no prohibition against a grand jury returning an indictment charging the defendant with having attempted to commit a felony. In fact, this action would be consonant with the duty imposed if the evidence did not warrant a true bill for the higher crime." [Citations omitted]
This same rationale was followed in Cooper, supra, where the defendant was also indicted for attempting to commit burglary. Also see Richardson v. State, 390 So.2d 4 (Ala. 1980), where the defendant was indicted and convicted for "attempting" to commit larceny.
The general attempt statutes discussed in Bradford, supra,Foster, supra, and Cooper, supra, were codified in the Code of Alabama 1975, at § 13-9-3. That section has since been replaced by §§ 13A-1-9 and 13A-4-2, Code of Alabama 1975, but we see no valid reason to depart from the authority of those former cases. Therefore, if an indictment definitively sets out the elements of a particular substantive offense, and the statutory offense is not one which includes conduct that occurs in an attempt to commit the crime[3], the indictment is not demurrable if it further alleges that the defendant "attempted" to commit the offense.
Under Alabama law there is no requirement that an indictment specify that a defendant attempted to commit a particular substantive offense for that defendant to be convicted of attempting to commit the offense. Bateman v. State,408 So.2d 194, (Ala.Cr.App. 1981)[4]. Therefore, when an indictment is intended to charge that only an attempt to commit the substantive offense occurred, it would be illogical to require the indictment to specify more than an attempt to commit the offense. We find that the word "attempt" in an indictment, when coupled with the other necessary elements describing the substantive offense, is sufficient to apprise an accused with reasonable certainty of the nature of the accusation against him.
In an analogous case, People v. Kessler, 30 Ill. App.3d 1021,333 N.E.2d 69 (1975) the Appellate Court of Illinois decided the question of whether the charging of "attempt" to commit murder was sufficient to apprise the defendant of the crime charged as follows:
 "As material here, the information alleges, that Rodney Glen Abney, Ronald Richard Mass. and Rudolph Louis Kessler,
 "`Committed the offense of Attempt, in that they, with intent to commit the offense of Murder, attempted to kill and murder (victim).'
 "Defendent urges that the information is void because it does not describe the acts which comprise a `substantial step toward the commission' of the offense intended, within the meaning of the attempt statute (Ill.Rev.Stat. 1971, ch. 38, sec. 8-4 (a)). He reasons that alleging an `attempt' to kill does not describe the act since the attempt is the offense itself. The State refers to a more common meaning of `attempt' as synonymous with `tried', or `made an effort' to kill, and argues that it is not a mere repetition of the offense charged. (Webster's Seventh New Collegiate Dictionary) Thus, that the allegations of the attempt to kill with the specific intent to commit murder state the elements of the offense of Attempt sufficiently to fairly apprise *Page 348 
the defendant of the crime charged and to protect him from subsequent prosecution for the same offense. We agree. In an indictment for Attempt, the crime intended need not be set out as fully as would be required for a statement of the actual commission of the offense. (People v. Williams (1972), 52 Ill.2d 455, 461, 288 N.E.2d 406). The allegation that defendant with the requisite intent, `attempted to kill and murder' a named victim, was sufficient to describe an act which constituted a substantial step toward the commission of murder." (Citations omitted) 333 N.E.2d, at 70-71.
Where only an attempt to commit a substantive offense is to be charged in an indictment it has been recognized that "the crime which is intended to be committed need not be set forth fully and technically." 42 C.J.S. Indictments and Information
§ 150 (1944).
More particularly, where it adequately describes the offense, "it is sufficient to charge an attempt to commit arson in the language of the statute defining the offense." 6A C.J.S. Arson
§ 35 (1975).
By examining the indictment in this case in light of the foregoing authorities, we find that the indictment was sufficient to apprise appellant of the offense he was accused of committing. Therefore, the demurrer was properly overruled.
 II
Appellant next asserts that the items of evidence seized from his residence pursuant to the October 30, 1980, search warrant should have been suppressed. His argument is two-fold: (1) He claims that the credibility of the informant is not established on the face of the affidavit[5] underlying the search warrant and (2) That the affiant, Sgt. Thomas Greene, misrepresented facts he knew to be false to Judge Montgomery to obtain the search warrant.
 A THE CREDIBILITY OF THE INFORMANT
The appellant does not contend that the informant's basis of knowledge, the first prong of Aquilar v. Texas, 378 U.S. 108,84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), was not shown on the face of the affidavit. His argument is that the veracity prong ofAquilar was not satisfied.
Appellant conceded that the affidavit addressed the credibility of the informant in the following "five ways":
1. "Said informant is reliable and credible."
2. "[T]he informant has given information in the past which has been true and correct."
3. "[T]he informant has given information in the past which . . . has led to an arrest."
4. "[T]his informant has given me information in the past concerning criminal investigations the details of which I have personally found to be correct," and
5. "[T]his informant has given me information in the past concerning criminal investigations the details of which I have found to be correct through officers or records of the Birmingham Police Department."
Appellant argues that for the veracity prong of Aquilar to have been satisfied, the affiant should have stated, in addition to the information set out above, "that the informant had given no past information that had been false or incorrect." No authority is cited for this contention. We do not think that such a "disclaimer" in the affidavit is necessary to satisfy the veracity prong of Aquilar.
"The issue presented by the veracity prong of Aquilar is whether the informant is `credible' or his information `reliable.'" Carter v. State, 435 So.2d 137 (Ala.Crim.App. 1982), relying upon Aquilar, 84 S.Ct. 1514. Consequently, the veracity prong *Page 349 
may be said to have a "credibility spur" and a "reliability spur." W. LaFave, 1 Search and Seizure 502 (1978); Moylan,Hearsay and Probable cause; An Aquilar and Spinelli Primer 25 Mercer L.Rev. 741, 734 (1974).
The affidavit in this case contains sufficient information from which either the inherent credibility of the informant or the reliability of his information on this particular occasion could be determined.
"In our opinion, the "credibility spur" of Aquilar's veracity prong is satisfied on the face of the affidavit. If the affiant in this case had only made the bare assertion that he believed the informant to be "reliable and credible," then the district judge issuing the search warrant would not have had a sufficient factual basis for crediting the report of the unnamed informant. Spinelli v. United States, 393 U.S. 410,89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aquilar, supra. Such a conclusory assessment of the informant, standing alone, could not establish the informant as a "truth-speaker" or "induce a prudent and disinterested observer to credit" the information given by the informant. United States v. Harris, 403 U.S. 573,91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971).
However, from the five "indicia of credibility" which are set out above, it is clear that the district judge had much more information about the informant's trustworthiness than that he was "reliable and credible." The four other "indicia of credibility" contained in the affidavit which describe the informant's past performances provides an ample factual basis for believing the informant. Reference to a confidential informant's "track record" of past performances is a viable means of determining his credibility. LaFave, Vol. 1, at 508; Moylan, 25 Mercer L.Rev., at 758.
As this court stated in Travis v. State, 381 So.2d 97, 100
(Ala.Cr.App. 1979), cert. denied, 381 So.2d 102 (Ala. 1980):
 "A declaration that the informant's past information has led to convictions is a sufficient showing of the informant's credibility, McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). "`It should not be concluded, however, that for an informant to have an acceptable "track record" it must appear that his prior information has resulted in one or more convictions, for this clearly is not the case. As explained in People v. Arnold, 186 Colo. 372, 527 P.2d 806 (1974):
 "`"To impose the more stringent requirement that the information led to convictions would impose an undue restriction on law enforcement officers. The information previously furnished may be in connection with cases not yet tried or may relate to prosecutions dismissed for reasons unrelated to the reliability of the informant's information. Of course, the fact that the information previously supplied has resulted in convictions would strengthen the reliability factor of the informant."' LaFave, Vol. 1 at 510.
 "In Keller v. State, 54 Ala. App. 127, 305 So.2d 402
(1974), this Court held that an assertion in the affidavit that the informant's prior information led to three arrests stated sufficient facts upon which to base the credibility of the informant. While the better view is that a bald assertion that the informant's past information prompted the police to make one or more arrests will not suffice to establish the informant's credibility (because it does not indicate the information was thereby shown to be correct), a determination of credibility can properly be made where it is revealed not simply that arrests were made, but rather that the prior information led to `arrest and prosecutions' or to arrest followed by `a finding of probable cause'. LaFave, Vol. 1 at 514-515. Also an informant need not be shown to have been reliable any particular number of times. Bates v. State, 51 Ala. App. 338, 285 So.2d 501, cert. denied, 291 Ala. 773, 285 So.2d 506
(1973), cert. denied, 416 U.S. 939, 94 S.Ct. 1940, 40 L.Ed.2d 289 (1974)."
While the fact that an informant has given information in the past which led to *Page 350 
an arrest may not suffice to establish the informant's credibility, when coupled with other circumstances it may.LaFave, Vol. 1, at 515; See also Mitchum v. State,384 So.2d 1193, 1200 (Ala.Cr.App.), cert. denied, 384 So.2d 1205 (Ala. 1980) and authority cited therein. In this case, the informant, in addition to giving past information that led to an arrest, had given past information that was "true and correct."Gonzalez v. State, 577 S.W.2d 226 (Tex.Cr.App.), cert. denied,444 U.S. 853, 100 S.Ct. 109, 62 L.Ed.2d 71 (1979); State v.Caldwell, 25 N.C. App. 269, 212 S.E.2d 669 (1975). The informant had also given "correct" detailed information concerning criminal investigations to the affiant personally and to other officers of the Birmingham Police Department. United States v.Guinn, 454 F.2d 29 (5th Cir. 1972); State v. Williams,49 N.C. App. 184, 270 S.E.2d 604 (1980).
It appears that the affiant in this case passed on all he knew about his informant to the district judge short of compromising the informant's identity. Moylan, supra, at 760. In our opinion the five "indicia of credibility" contained in the affidavit were sufficient for the district judge to reasonably decide that the informant was probably a "truth-speaker." Moylan, supra, at 760. While no one of the five factors would be sufficient, when divorced from the others, to establish the "credibility spur" of Aquilar's
veracity prong, the combination is sufficient to lead a reasonable and prudent man to believe the informant was telling the truth. Carter, supra.
The two prongs of Aquilar being satisfied by the affidavit, we find that probable cause existed which warranted the search of appellant's residence. Probable cause is concerned with "probabilities" that "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302,1310, 93 L.Ed. 1879 (1949).
Despite appellant's allegations to the contrary, we find that the affidavit to the search warrant contains definite statements as to the time the informant observed the various items of evidence at appellant's residence or in his car that were relevant to this case. Not only had the affiant spoken with the informant within "the last 48 hours," but of the items of evidence described in the search warrant, the informant had seen the "clear double strand multi wire known as speaker wire" at appellant's residence within the past three weeks and the "yellow single strand wire known as blasting cap wire" within the last week.
Walker v. State, 49 Ala. App. 741, 275 So.2d 724, cert.denied, 290 Ala. 371, 275 So.2d 732 (1973), cited by appellant, where the time element for the informant's observations was completely missing from the affidavit, is not analogous to the facts in the present case. It is true that an affidavit used to support a search warrant "must speak as of the time of the issue of that warrant." Sgro v. United States, 287 U.S. 206,211, 53 S.Ct. 138, 140, 77 L.Ed. 260, 263 (1932). There is, however, no arbitrary time limit on how old the information contained in an affidavit may be. United States v. Guinn, 454 F.2d, at 36. A statement by the affiant that his informant observed the alleged offense "within" a certain period of time is sufficiently clear and definite. Annot., 100 A.L.R.2d 525 § 5 (c) (1965). The affidavit need not state that exact time the informant observed the events relied upon to show probable cause. Travis, 381 So.2d, at 99.
The only other item listed in the search warrant which was described in the supporting affidavit by the informant, is the "machine gun." It is true that no precise time is given in the affidavit for when the informant had seen this item at appellant's residence. However, from the return that was made on the search warrant, it does not appear that a machine gun was seized at appellant's residence. Moreover, there is no evidence that a machine gun was used in any way to perpetrate the offense under consideration. We have been cited to no authority which, under *Page 351 
these circumstances, would require the vitiation of an otherwise precise and definite affidavit.
 B THE AFFIANT'S REPRESENTATIONS
The appellant next complains that the search warrant was invalid because Sergeant Thomas Greene, the affiant, represented information in the supporting affidavit which was subsequently contradicted and proven "false." Appellant claims that from Sgt. Greene's testimony at the pretrial suppression hearing it is apparent that the informant could not have seen the J.C. Penney battery in appellant's car "within the last seven days." Appellant argues that although the October 30 affidavit states that Sgt. Greene had spoken with the informant "in the last 48 hours," his testimony at the suppression hearing revealed that he, in fact, had received the information about the battery from the informant around 9:00 p.m. on October 29, or within sixteen hours of the time the warrant was obtained.
There is no question that the explosive device, which was wired to a J.C. Penney battery, was at the Galilee Baptist Church as early as 8:30 a.m. on October 22 and remained there until it was deactivated. Appellant correctly points out that if Sgt. Greene talked with the informant for the first time at 9:00 p.m. on October 29, then the informant could not have seen the battery in appellant's car "within the last seven days," since "within the last seven days" the battery would either have been at the church or in police custody.
In United States v. Thomas, 489 F.2d 664 (5th Cir. 1973) the Fifth Circuit Court of Appeals adopted the following standards for evaluating affidavits which are alleged to contain misrepresentations which invalidate a search warrant. Evidence should be suppressed when there is either:
 "(1) An intentional misstatement by an affiant-agent, whether material or immaterial to showing probable cause; or (2) a negligent or unreasonable assertion in an affidavit, if material to showing probable cause but not where (3) the mistake is innocent, even if material to probable cause."
This standard is applied in Alabama. Richardson v. State,376 So.2d 205, 214 (Ala.Cr.App. 1978), aff'd, 376 So.2d 228 (Ala. 1979); Smith v. State, 351 So.2d 668, 673 (Ala.Cr.App.), cert.denied, 351 So.2d 675 (Ala. 1977).
After examining the affidavit in its entirety and comparing it closely with the remainder of the record, including Sgt. Greene's testimony it is our judgment that nowhere was it shown that Greene intentionally or negligently misrepresented the facts underlying the search warrant. See Richardson, supra. It is clear that the inconsistent time period in question, which Greene related to the district judge, was an innocent mistake at worst.
Every detail in the affidavit concerning the battery, except the number of days that had passed since the informant had last seen it in appellant's car, was shown to be correct: its unique description, from whom and when it had been stolen, that it was recovered at the church on October 22 as part of the explosive device, and that appellant had used it in his car just prior to the explosive device being discovered.
Obviously, Greene knew when the bomb was discovered and when he talked with the informant. Just as obviously, the informant knew the time he talked with Greene and was cognizant that the explosive device had been discovered at the church before then. The informant identified the battery from pictures taken of the explosive device.
As far as the informant's story is concerned, it should be remembered that appellant, in fact, had the battery in his car prior to the discovery of the bomb, and "claimed" to still have had it after the discovery. Also, while the informant's information connecting appellant with the battery must certainly be considered a strong factor for the district judge to have determined there was probable cause to issue the search warrant, it was by no *Page 352 
means the only information supplied by the informant which connected appellant to the crime.
In light of the other parts of the affidavit which were supplied by the informant, coupled with other facts in the record which substantially verify the informant's story, only in the most hyper-technical sense could it be said that the affiant intentionally or negligently attempted to deceive the district judge by representing facts he knew to be false. An innocent mistake was made as to the number of days that had passed since the informant had seen the battery in appellant's car. Therefore, we find that the trial court correctly denied the motion to suppress.
 III
The appellant maintains that the trial court improperly considered his prior federal felony conviction under26 U.S.C.A. § 5861 (d) in sentencing him as a recidivist pursuant to Alabama's Habitual Offender Statute. Under the authority ofCarter v. State, 420 So.2d 292 (Ala.Cr.App. 1982) we are constrained to agree.
In pertinent part, 26 U.S.C.A. § 5861 (d), reads as follows:
 "It shall be unlawful for any person to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."
26 U.S.C.A. § 5671 provides as punishment for violation of any provision of the "National Firearms Act[6] a fine of not more than $10,000, or imprisonment of not more than ten years, or both.
As this court, recognized in Carter, supra, in order to determine whether a defendant's prior conviction in federal court can correctly be used to enhance his punishment under Alabama's Habitual Offender Statute "we must decide whether "the conduct made the basis of that conviction constitutes a felony under . . . § 13A-1-2 (4) . . . or would have constituted a felony under that section had the conduct taken place in Alabama on or after January 1, 1980.' A.R.Cr.P. 6 (b)(3)(iv)."
Alabama has no counterpart to 26 U.S.C.A. § 5861 and consequently cannot proscribe the conduct made the basis of appellant's federal conviction. We therefore have no choice but to hold that the conduct underlying appellant's federal conviction under 26 U.S.C.A. § 5861 (d), would not have constituted a felony in Alabama according to Rule 6 (b)(3)(iv), Alabama Rules of Criminal Procedure, and cannot be used to enhance his punishment.
The judgment of conviction by the Jefferson Circuit Court is hereby affirmed and the cause remanded for proper sentencing in a manner consistent with the holding of this opinion.
AFFIRMED: REMANDED FOR PROPER SENTENCING.
All the Judges concur.
[1] Sgt. Greene testified that Kinestix is a highly explosive component containing ammonium nitrate which is mixed with nitro methane. Kinestix is commonly used in demolition work and one canister of Kinestix is equivalent to approximately two and one-half sticks of dynamite.
[2] In Bradford v. State, 146 Ala. 150, 41 So. 471 (1906), the indictment charged an "attempt to escape." Section 4710, Code of Alabama (1896), the applicable Code section which related to "any prisoner who escapes," made no reference to an attempted escape. Section 5306, Code of Alabama (1896), was the general attempt statute authorizing a conviction for an attempt to commit any offense charged.
[3] See the discussion in Petty v. State, 414 So.2d 182
(Ala.Cr.App. 1982) and Reed v. State, 372 So.2d 876 (Ala. 1979).
[4] In Bateman v. State, 408 So.2d 194 (Ala.Cr.App. 1981), the defendant was indicted for arson in the first degree. The indictment made no mention of attempt, although an attempt to commit the offense was all that was shown at trial. Under §13A-1-9 taken in conjunction with § 13A-7-41, Code of Alabama 1975, the defendant was properly convicted of attempted arson in the first degree.
[5] The search warrant and accompanying affidavit are attached as an Appendix to this opinion.
[6] 26 U.S.C.A. § 5849.
 APPENDIX DISTRICT COURT OF JEFFERSON COUNTY STATE OF ALABAMA AFFIDAVIT FOR SEARCH WARRANT
Before me, Judge of the District Court of Jefferson County, personally appeared Sgt. T.C. Greene, Birmingham PoliceDepartment, who, after being duly sworn, upon his oath deposes and says as follows: I am Sgt. T.C. Greene of the Birmingham Police Department. I am investigating the placing of an explosive device at Galilee Baptist Church located at 3753 Carver Avenue, Birmingham, Jefferson County, Alabama, on October 22, 1980. The device which I examined at the Galilee Baptist Church on October 22, 1980, consisted of one J.C. Penney battery, 3 year warranty, and was black in color, upon which was inscribed on the battery "D. Swann, 7-5-80, 68 Camaro, 13522". Also found was one "Baby Ben" Westclox wind-up clock, one electric blasting cap, 3 cartridges of Kinestik 1/3 solid *Page 353 
component explosive which are pink in color with a screw-on-top 7 inches long and 1 1/4 inch around, approximately 6 feet of clear double strand multi strand wire, one gold in color and one silver in color, known as speaker wire, and 8 feet of blasting cap wire, which is also known as leg wire. I have spoken in the last 48 hours with a confidential informant. Said informant is reliable and credible and the informant has given information in the past which has been true and correct and which has led to an arrest. Further, this informant has given me information in the past concerning criminal investigation the details of which I have personally found to be correct or found to be correct through officers or records of the Birmingham Police Department. Said informant has advised that he has seen within the last seven days a J.C. Penney battery 3 year warranty, black in color, upon which was inscribed "D Swann, 7-5-80, 68 Camera, 13522" in the possession of Michael Beryl Reese located in a faded green color Pontiac GTO 1969 model with a washed out paint white area on hood and no chrome bumper on front and jacked up back end, located on the street at the apartment of Michael Beryl Reese located at 1444 D Hugh Denman Drive, Birmingham, Jefferson County, Alabama. Said battery was stolen from a 1968 Camaro automobile owned by Deitrich Swann on October 4, 1980. I personally talked to Deitrich Swann and got this information and I got this information from the Birmingham Police Department incident report concerning the incident of the theft of the battery. Further, Swann described the inscription "D. Swann, 7-5-80, 68 Camera, 13522" on his battery that was stolen to me. Said informant has been in the residence of Michael Beryl Reese located at 1444 D Hugh Denman Drive, Birmingham, Jefferson County, Alabama, on several occasions and has seen what the informant describes as a .45 automatic pistol, a .44 special revolver, silver in color with wooden handles, a 22 bolt action with a tubular magazine rifle, a 30-30 lever action rifle and what he describes as a machine gun with a round iron piece or drum on the bottom. Said informant has been advised by Michael Beryl Reese that said latter item is, in fact, a machine gun. Said informant has also seen a .38 short barrel revolver in the car of Michael Beryl Reese which he describes as a 1969 Pontiac GTO, faded green in color, with a washed out paint white area on hood and no chrome bumper on front and jacked up back end with an up-to-date Alabama license tag which was located at 1444 D Hugh Denman Drive, Birmingham, Jefferson County Alabama.
Said informant said that he knows Michael Beryl Reese to work on and has seen him work on electrical items such as stereoes, radios, television sets, and has seen in the past three weeks wire which is consistent with clear double strand multi strand wire commonlyknown as speaker wire, some of which had one silver strand and one gold strand, in the possession of Michael Beryl Reese at an apartment of Michael Beryl Reese at 1444 D Hugh Denman Drive, Birmingham, Jefferson County, Alabama, on several occasions within the last several weeks. Further said informant has talked with Michael Beryl Reese and Michael Beryl Reese had talked to him and shown that he Michael Beryl Reese possesses knowledge of the working of the above electrical items. Said informant has said he has seen in the last week yellow single strand wire in the possession of Michael Beryl Reese at his apartment located at 1444D Hugh Denman Drive, Birmingham, Jefferson County, Alabama, which he has described and identified as being the same type as was found on the explosive device placed at the "Galilee Baptist Church". Said informant has seen pictures of the explosive device found at the "Galilee Baptist Church" and said informant identified the battery as being one and the same as that described above, the double strand wire with a gold strand and silver strand and other wire depicted within the picutres the informant of the explosive device was consistent in appearance according to the informant with wire described above that he saw at Michael Beryl Reese's apartment at 1444D Hugh Denman *Page 354 
Drive, Birmingham, Jefferson County, Alabama. I have reviewed the report Officer R. Harrison of the Birmingham Police Department concerning the stolen car of Deitrich Swann recovered on October 6, 1980 behind Spaulding School. Said car was a 1968 Camaro from which a J.C. Penney 3 year battery was taken and which has been determined to be part of an explosive device found at the "Galilee Baptist Church". Said car was found within 1/2 mile of Bullard Construction Company located at 1544 Mims Avenue S.W., Birmingham, Jefferson County, Alabama. On July 1, 1980, Bullard Construction Company had stolen: 1/2 case of 1/3 Kinestix component cartridge blasting agent consisting of two components. Component A which is a cylinder 7 inches long and 1 1/4 inch round and Component B is a tube of red substance which combined with component A becomes explosive in nature; and 25 noiseless trunk line delayed blasting caps and an unknown amount of Hercules brand prima cord.
I received this information concerning the theft from Bullard Construction Company from officials of the Company with whom I spoke, specifically Mr. Bullard. Further, I got similar information from incident reports prepared by Officers C.M. Quinn, and R.D. Harrison and E. Thomas and W.K. Patterson of the Birmingham Police Department on July 15, 1980 and September 22, 1980.
Based upon the above, I believe I have probable cause to believe that there is located at 1444D Hugh Denman Drive, Birmingham, Jefferson County, Alabama, clear double strand multi wire known as speaker wire and yellow single strand wire known as blasting cap wire and any cuttings therefrom, Kinestix cartridges, components A B, Component A being white in color and Component B being red in color and when combined being pink in color, wire clippings; blasting caps, knives, wire cutters and/or other electrical tools used for cutting or stripping wire; and grease and/or cable clamps or other substances consistent with the J.C. Penney 3 year black battery stolen from Deitrich Swann and used in the above described explosive device; and a machine gun who George McGrath of the Bureau of Alcohol, Tobacco and Firearms, U.S. Treasury Department tells me Michael Beryl Reese would not have a license for, based on his opinion, based on his past training, and experience as a agent of "A.T.F." due to Michael Beryl Reese's prior record which I got from his "F.B.I. Rap Sheet", and further believe that the items described above are also located in one 1969 faded green color Pontiac GTO with a washed out paint white area on hood and no chrome bumper on front and jacked up back end bearing Alabama license tag which I learned to have tag # BRD 427 and VIN # 242177P215827, the property of Michael Beryl Reese.
Subscribed and sworn before me this 30 day of October, 1980.
 (S) Sgt. T.C. Greene
AFFIANT
(S) J. Montgomery
Judge, District Court of Jefferson County, Alabama
 DISTRICT COURT OF JEFFERSON COUNTY STATE OF ALABAMA SEARCH WARRANT
TO: ANY LAWFUL OFFICER OF SAID COUNTY AND SAID STATE:
Proof by affidavit having this day been made before me as Judge of the District Court of Jefferson County that there is probable cause for believing that there is located at 1444 D Hugh Denman Drive, Birmingham, Jefferson County, Alabama, clear double strand multi wire known as speaker wire and yellow single strand wire known as blasting cap wire and any cuttings therefrom, Kinestik cartridges, components A B, Component A being white in color and Component B being red in color and when combined being pink in color, wire clippings; blasting caps, knives, wire cutters, and/or other electrical tools *Page 355 
used for cutting or stripping wire; and grease and/or cable clamps or other substances consistent with the J.C. Penney 3 year warranty black battery stolen from Deitrich Swann and used in the above described explosive device; and a machine gun which George McGrath of the Bureau of Alcohol, Tobacco and Firearms, U.S. Treasury Department tells me Michael Beryl Reese would not have a license for, based on his opinion, based on his past training, and experience as an agent of "A.T.F." due to Michael Beryl Reese's prior record which I got from his "F.B.I. Rap Sheet". The above-described address is the residence of Michael Beryl Reese.
You are therefore commanded to make, in the daytime, an immediate search of the premises described above, a better description of which is not available, for the above described property, and if you find the same or any part thereof to seize the same and hold it until further order from the District Court of Jefferson County. And you are hereby commanded to make a return of this writ within ten days as required by law.
Dated, this the 30th day of October, 1980.
 (S) J. Montgomery
JUDGE, DISTRICT COURT OF JEFFERSON COUNTY